*In re* MARRIAGE OF EZRA EDWARD TRULL, Petitioner and Counter-defendant-Appellant, and LOUISE B. TRULL, Respondent and Counter-plaintiff-Appellee.

Second District   Nos. 2—93—0154, 2—93—0406 cons.

Opinion filed December 22, 1993.

Douglas C. Tibble, of McDermott, Will & Emery, of Chicago (P. Andre Katz, of counsel), and Charles F. Helsten, of Hinshaw & Culbertson, of Rockford, for appellant.

Martenson, Greenlee & Kreitlow, of Rockford (David L. Martenson, of counsel), for appellee.

JUSTICE QUETSCH delivered the opinion of the court:

Ezra Trull filed a petition for dissolution of marriage on July 11, 1991, in the circuit court of Winnebago County. Louise Trull filed a counterpetition on that same date. Following a trial, the court entered an order on June 29, 1992, dissolving the marriage, allocating the marital property, and awarding Louise maintenance of $1,700 per month. As part of its allocation of the marital property, the court ordered the parties to retain joint ownership of the marital residence and have an equal right to any proceeds received from a pending lawsuit against the Beloit Corporation for its alleged disposal of chemical waste on the real estate upon which the marital residence is built. Both parties filed motions for reconsideration. On September 25, 1992, the trial court entered an amended order granting Louise sole ownership of the marital residence in lieu of maintenance. The court also awarded certain life insurance policies to Ezra, and it stated that in all other respects the original order dissolving the marriage and allocating the marital property would remain in effect. Ezra appeals, contending that the trial court erred by: (1) amending its original order and awarding Louise sole ownership of the house in lieu of periodic maintenance and (2) valuing his professional goodwill as a divisible marital asset. We reverse and remand.

■ Initially, we address Louise's motion to strike the statement of facts contained in Ezra's brief for being inaccurate and argumentative. Supreme Court Rule 341(e)(6) requires that the statement of facts "contain the facts necessary to an understanding of the case, stated accurately and fairly without argument or comment, and with appropriate reference to the pages of the record on appeal." (134 Ill. 2d R. 341(e)(6).) We find that Ezra's statement of facts conforms to

the requirements of Rule 341(e)(6), and we therefore deny the motion to strike.

The facts of this case, as gleaned from the briefs and the record, are as follows. The parties were married on April 10, 1954, and have three adult children. At the time of trial, Ezra was 67 years old and Louise was 62. Ezra is in good health and has been self-employed as a dentist with a specialty in prosthodontics for the last 32 years. Louise has a college degree and she was working on a master's degree when she married Ezra and quit school. During the marriage, Louise sometimes worked in Ezra's office. She answered the phone, filled out insurance forms, and kept track of expenses and receipts. Louise also taught GED classes for one year and served on the Winnebago County Board for four years. She is not currently employed. Louise testified that she was diagnosed as having breast cancer six years before the trial, and she underwent a modified radical mastectomy at that time. She is currently undergoing an "experimental cancer treatment," but has no health insurance and is not eligible for medicare or medicaid.

The Trulls' joint tax returns show that their adjusted gross income from 1984 to 1990 was as follows:

| Year | Adjusted Gross Income |
|------|----------------------|
| 1984 | $36,584.90 |
| 1985 | $35,918.33 |
| 1986 | $34,678.00 |
| 1987 | $31,679.22 |
| 1988 | $43,320.00 |
| 1989 | $44,809.71 |
| 1990 | $41,004.32 |

Louise testified that after filing for divorce she discovered that Ezra had been underreporting his income by $25,000 per year. Ezra denies underreporting his income.

The Trulls are also currently involved in a pending lawsuit in Federal court against the Beloit Corporation. In that lawsuit, the Trulls seek damages resulting from the Beloit Corporation's alleged disposal of chemical wastes on the property upon which their marital residence is built. Louise submitted to the trial court an appraisal of the marital residence. Associated Real Estate Appraisers, Inc., valued the real estate at $475,000 if uncontaminated and $89,000 if contaminated. However, if contaminated, the property would lack marketability for 15 to 30 years and cost millions of dollars in cleanup costs. Therefore, the appraisers determined that the property would in fact have no resale value.

Following the trial, the court entered an order on June 26, 1992, dissolving the marriage and dividing the marital property. The court determined that the parties would retain an equal ownership interest in the marital home and in the eventual proceeds of the lawsuit against the Beloit Corporation. However, the court granted to Louise the right to retain sole possession of the marital home and receive any rental income generated from a tenant house located on the property. The court also allocated to Ezra other marital property worth a total of $152,266, and it awarded to Louise marital property worth $145,000. The court further awarded Ezra three life insurance policies valued at $22,000.39, and it ordered Ezra to maintain Louise as the beneficiary of those policies. Ezra was ordered to pay to Louise $1,700 per month in maintenance.

Both parties filed motions for reconsideration. Ezra argued that the court erred by: (1) considering the goodwill attributable to his dental practice to be marital property; (2) requiring Ezra to maintain Louise as the beneficiary of his life insurance policies; and (3) setting maintenance at $1,700 per month. Louise argued that the court had failed to provide her with sufficient funds for medical care, and she offered to waive her right to maintenance in return for sole ownership of the marital home, the Beloit lawsuit, and the cash surrender value of Ezra's life insurance policies.

On September 25, 1992, the court entered an amended order of dissolution of marriage and awarded Louise sole ownership of the marital residence in lieu of maintenance. The order did not refer to the proceeds from the lawsuit against the Beloit Corporation. The court also awarded to Ezra his life insurance policies "in their entirety including cash values and the right to nominate beneficiaries." In all other respects, the first order of dissolution of marriage was to remain in effect. Ezra filed a motion for new trial, which the trial court denied. This timely appeal followed.

Louise contends that we should dismiss Ezra's appeal since he may have underreported his income to the Internal Revenue Service. However, Louise admits that she can find no authority supporting this argument. We therefore deem this argument waived pursuant to Supreme Court Rules 341(e)(7) (134 Ill. 2d R. 341(e)(7)) and 341(f) (134 Ill. 2d R. 341(f)), which provide that a party's brief must contain citations to relevant authority supporting the argument advanced on appeal.

We turn now to the substantive issues raised on appeal. Ezra first argues that the amended order of September 25, 1992, which granted Louise's motion for reconsideration in part by awarding her the mari-

tal residence in lieu of maintenance, should be reversed because Louise presented no new evidence supporting the trial court's modification of its original judgment. The power to modify a judgment rests in the discretion of the trial judge. (*In re Marriage of Parello* (1980), 87 Ill. App. 3d 926, 931.) The trial court may act on the points specifically raised in the post-trial motion or on any error which it perceives must be remedied in order to do justice between the parties. *Parello*, 87 Ill. App. 3d at 932.

In this case, the trial judge's comments at the hearing on the motions for reconsideration indicate that he was concerned that his original order awarding Louise $1,700 per month in maintenance did not provide sufficient funds for her medical care. Thus, the judge's amended order awarding Louise the marital residence in lieu of maintenance was an attempt to do justice between the parties.

However, when the judge issued his first order dissolving the marriage and allocating the marital property, he stated that it was "impossible to *** deal with [the marital residence in that] the opinions are it's either worth $450,000 or it's worth zero" depending upon the outcome of the lawsuit against the Beloit Corporation. The judge also stated that he could not award the sole ownership of the marital residence to either party because he did not have "any idea of what it's going to turn out to be." The judge accordingly awarded each party one-half of both the marital residence and the proceeds from the lawsuit.

When the judge amended his order and allocated sole ownership of the marital residence to Louise, he stated that he was now "guessing" that Ezra's one-half interest in the marital property equalled the $1,700 per month in maintenance which Ezra had been previously ordered to pay. We note that the valuation of property is a question of fact, and the trial court's determination of value will not be reversed unless it is contrary to the manifest weight of the evidence. (*In re Marriage of Vucic* (1991), 216 Ill. App. 3d 692, 703.) However, in the absence of competent evidence of valuation, there is no basis upon which the reviewing court can determine the propriety of the directed property distribution. *In re Marriage of Hellwig* (1981), 100 Ill. App. 3d 452, 459; *In re Marriage of Moll* (1992), 232 Ill. App. 3d 746, 752.

■ In this case, the appraisal submitted to the trial court stated that the marital residence is worth $475,000 if uncontaminated. If contaminated, though, the marital residence will have no resale value for 15 to 30 years and will require millions of dollars in cleanup costs. Thus, the value of the marital residence is directly related to the Trulls' lawsuit seeking damages from the Beloit Corporation for con-

taminating the property. However, no competent evidence of the value of the lawsuit against the Beloit Corporation was presented to the trial judge either during the trial or the hearing on the motions to reconsider. We therefore have no basis to determine whether the trial court's division of the marital property was in "just proportions" as required by section 503(d) of the Illinois Marriage and Dissolution of Marriage Act (the Act) (750 ILCS 5/503(d) (West 1992)).

Furthermore, in order to justify a conveyance of property in lieu of maintenance, the recipient spouse must show that he or she is entitled to maintenance and that periodic payment of maintenance would not be feasible. (*Shaver v. Shaver* (1978), 56 Ill. App. 3d 845, 848.) Ezra concedes that Louise is entitled to maintenance. However, he argues that there has been no finding that the periodic payment of maintenance would not be feasible.

Louise argues that the periodic payment of maintenance is not feasible because Ezra does not pay his bills. (*Hall v. Hall* (1974), 18 Ill. App. 3d 583, 586.) In support of this argument, Louise points to the two petitions for contempt she filed against Ezra, one for failure to pay maintenance and the other for failure to pay real estate taxes and house expenses. However, the trial court never found Ezra to be in contempt.

We do note that the parties also bickered over the court's order to exchange certain property, and the court stated that this case presented one of the more bitter divorces in recent years. Financial bickering between parties is one factor to be considered in determining whether to award property in lieu of maintenance. (*Riordan v. Riordan* (1977), 47 Ill. App. 3d 1019, 1023.) However, financial bickering alone is not enough to support an award of property in lieu of maintenance; there must be some further evidence that the payment of maintenance would not be feasible, such as the nonpayment of bills or the failure to work. *Hall*, 18 Ill. App. 3d at 586.

In addition, the conveyance of property in lieu of maintenance is justified only when the conveyance of the property is equitable. (*Shaver*, 56 Ill. App. 3d at 848.) In this case, since we cannot determine from the record the value of the marital residence, we are also unable to determine whether the conveyance of the marital residence in lieu of maintenance is equitable.

Accordingly, we remand this cause for the trial court to receive evidence concerning the values of the marital residence and the lawsuit against the Beloit Corporation and then to redetermine the apportionment of marital property. Upon remand, the court may, in light of additional evidence elicited, award to one party sole ownership of

the marital residence and all of the proceeds from the lawsuit, or it may allocate those marital assets on a percentage basis. Furthermore, since the allocation of a maintenance award depends heavily upon the apportionment of property, we also remand to the trial court the issue of whether and in what amount to award Louise periodic maintenance or property in lieu of maintenance. If the trial court again awards property in lieu of maintenance, it should set forth the factors it considered in determining that the periodic payment of maintenance would not be feasible.

We next address Ezra's argument that the trial court erred by awarding to him as a marital asset the goodwill developed in his dental practice. In *In re Marriage of Zells* (1991), 143 Ill. 2d 251, our supreme court held that goodwill, which represents the ability to acquire future income, is not to be considered a divisible marital asset. The court concluded that goodwill is already reflected in the following factors which the trial court must consider in reaching a just property distribution under section 503(d) of the Act:

> " '[T]he relevant economic circumstance of each spouse when the division of property is to become effective, *** [the] occupation, amount and sources of income, vocational skills, [and] employability *** of each of the parties *** [and] the reasonable opportunity of each spouse for future acquisition of capital assets and income.' " (143 Ill. 2d at 256, quoting Ill. Rev. Stat. 1991, ch. 40, pars. 503(d)(4), (d)(7), (d)(10).)

To figure goodwill as a divisible marital asset *and* a factor in examining the husband's income potential would be duplicative and improper. *Zells*, 143 Ill. 2d at 256; see also *In re Marriage of Courtright* (1987), 155 Ill. App. 3d 55, 59.

In this case, Ezra contends that $45,000 awarded to him as the fair-market value of his dental practice actually represented his professional goodwill. The $45,000 figure was derived by Glen Miller, a CPA, as a sales price based upon cash basis profits. Cash basis profits represent the difference between Ezra's gross receipts and practice expenses, including rent, in 1991. Miller then multiplied this figure ($45,000) by a factor of one, "which is considered average and comprehends that the practice is not large in terms of gross receipts or cash basis profits compared to other dental practices." Miller concluded that the fair-market value of 100% ownership of the dental practice, "which includes the equipment and inventory that normally accompany such a sale is $45,000 which excludes the cash and accounts receivable that would remain with the seller."

■ We hold that the trial court erred in crediting Ezra with this $45,000. The court had previously awarded Ezra the dental office building, which he owned, and the equipment and inventory in his building. Therefore, a portion of the $45,000 represented a double consideration of Ezra's equipment and inventory. Furthermore, the portion of the $45,000 in excess of the equipment and inventory represented goodwill, which is calculated as "the value of a business or practice that exceeds the combined value of the physical assets." *In re Marriage of White* (1986), 151 Ill. App. 3d 778, 780.

Louise contends that this case is like *In re Marriage of Tietz* (1992), 238 Ill. App. 3d 965, in which the Appellate Court, Fourth District, affirmed the trial court's valuation of the husband's law practice. However, in *Tietz*, the appellate court specifically stated that the trial court valued the law practice by viewing the *tangible* assets, including accounts receivable. (*Tietz*, 238 Ill. App. 3d at 977.) In this case, by contrast, a portion of the $45,000 value of Ezra's dental practice represents monies in excess of the practice's tangible assets, and the rest of the $45,000 represents tangible assets which have already been awarded to Ezra.

Louise argues that Miller testified that he did not consider goodwill in his calculations, and the trial court stated that it was aware that "[t]he *Zells* case say [sic] you can't value what we usually call goodwill. And I looked at Miller's appraisal again, and I didn't think that that was in there." However, the fact remains that the value of Ezra's professional goodwill was improperly awarded to him as a marital asset, regardless of the good intentions of Miller and the trial court. Therefore, when reallocating the marital property, the trial court is not to consider the $45,000 fair-market value of the dental practice as a divisible marital asset.

Finally, we address an issue which may reemerge during such further proceedings. Ezra argues that if, on remand, the trial court decides to award Louise periodic maintenance, any such award should be in an amount less than $1,700 per month. Ezra contends that the $1,700-per-month maintenance award in the first order constituted an abuse of discretion because it did not accurately reflect Louise's living expenses.

Section 504(a) of the Act (Ill. Rev. Stat. 1991, ch. 40, par. 504(a) (now codified, as amended, at 750 ILCS 5/504(a) (West 1992))) requires the trial court to consider the following factors in determining the duration and amount of maintenance:

"(1) the income and property of each party, including marital property apportioned and non-marital property assigned to the party seeking maintenance;

(2) the needs of each party;

(3) the present and future earning capacity of each party;

(4) any impairment of the present and future earning capacity of the party seeking maintenance due to that party devoting time to domestic duties or having foregone or delayed education, training, employment, or career opportunities due to the marriage;

(5) the time necessary to enable the party seeking maintenance to acquire appropriate education, training, and employment, and whether that party is able to support himself or herself through appropriate employment or is the custodian of a child making it appropriate that the custodian not seek employment;

(6) the standard of living established during the marriage;

(7) the duration of the marriage;

(8) the age and the physical and emotional condition of both parties;

(9) the tax consequences of the property division upon the respective economic circumstances of the parties;

(10) contributions and services by the party seeking maintenance to the education, training, career or career potential, or license of the other spouse;

(11) any valid agreement of the parties;

(12) any other factor that the court expressly finds to be just and equitable."

An award of maintenance is a matter within the discretion of the trial court and will not be reversed on appeal unless it amounts to an abuse of discretion. An abuse of discretion occurs where no reasonable person would take the view adopted by the trial court. *In re Marriage of Morse* (1993), 240 Ill. App. 3d 296, 307.

In this case, Ezra earned most of the income during the parties' 37-year marriage while Louise stayed at home and cared for the children. Ezra's average adjusted gross income from 1984 to 1990, as reported to the IRS, was $38,284.93. However, both Louise and Miller testified that Ezra was underreporting his income by about $25,000 per year, and the trial court stated that it did not think "that those numbers have been very effectively challenged," so it gave them consideration. Louise testified that the parties did not spend much money on everyday living expenses, but that they spent approximately

$10,000 per year on trips and that Ezra sometimes gave her expensive gifts.

While Ezra remains healthy and continues to see patients, Louise suffers from cancer and hypertension and is unemployed. Her only income comes from the $300 per month she receives in tenant income and approximately $150 per month she receives from the sale of farm crops. Louise submitted a financial affidavit stating that her monthly expenses are $3,363. Contrary to Ezra's argument, Louise's testimony on cross-examination did not constitute an admission that her affidavit was false, but instead that she did not have the resources to meet her financial needs.

Ezra contends that this case is like *In re Marriage of McNeeley* (1983), 117 Ill. App. 3d 320, in which the Appellate Court, First District, held that the trial court's award of maintenance was an abuse of discretion. We do not agree. In *McNeeley*, the trial court awarded the wife $3,200 per month in maintenance, which amounted to 40% of the husband's gross income, based upon her unsigned affidavit that her total monthly expenses were $4,050. (*McNeeley*, 117 Ill. App. 3d at 328.) In reversing the trial court's maintenance award, the appellate court noted that there was no evidence to support this figure. (*McNeeley*, 117 Ill. App. 3d at 328.) For example, the wife listed a $650 monthly mortgage payment which was being paid by her husband. She also listed $1,071 in taxes based on a projected income of $48,600 per year. However, she was unemployed. (*McNeeley*, 117 Ill. App. 3d at 323.) Further, the wife's testimony had established that many of the expenses listed were not actually incurred each month but she felt that it "would be nice" to be able to afford them. *McNeeley*, 117 Ill. App. 3d at 328.

■ By contrast, Louise's testimony established that she actually incurred the listed expenses. We find that the trial court's original award of $1,700 per month in maintenance, which constituted approximately 50% of Ezra's reported income, did not constitute an abuse of discretion. We base this decision upon Louise's age and medical condition, her low monthly income, the impairment of her ability to become self-supporting due to devoting time to domestic duties during the 37-year marriage, the standard of living established during the marriage, and Ezra's financial and employment security.

Therefore, if the trial court on remand decides to again award Louise periodic maintenance, any such award is not *necessarily* required to be an amount less than $1,700 per month. However, we note that the amount of periodic maintenance will be dependent upon how the court reapportions the marital property. Therefore, we cannot

now determine whether a maintenance award greater or less than $1,700 per month would constitute an abuse of discretion.

For the foregoing reasons, the judgment of the trial court is reversed, and the cause is remanded.

Reversed and remanded.

WOODWARD and GEIGER, JJ., concur.