12 August 1999

NO. 4-98-0883

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

In Re: the Marriage of ) Appeal from

MARILYN J. CLAYDON, ) Circuit Court of

Petitioner-Appellant, ) McLean County

          and ) No. 96D222

RICHARD J. CLAYDON, )

          Respondent-Appellee. ) Honorable

)    Donald D. Bernardi,

)    Judge Presiding.

_______________________________________________________________

JUSTICE MYERSCOUGH delivered the opinion of the court:

In these proceedings, the circuit court dissolved the parties' marriage, distributed the marital and nonmarital prop

erty, and awarded maintenance to petitioner.  Petitioner appeals aspects of both the property distribution and maintenance award.  We affirm.

I. BACKGROUND

Petitioner, Marilyn Claydon, and respondent, Richard Claydon, were married for approximately 28 years.  They had two children, both of whom had graduated college and were emancipated at the time of these dissolution proceedings.  Shortly after their marriage the parties lived in the Washington, D.C., area while respondent attended dental school.  Thereafter, they moved to New Orleans, Louisiana, where respondent had a one-year internship.  Petitioner worked throughout the time respondent was in dental school and worked in New Orleans until the parties' first child was born.  Thereafter, petitioner was primarily a full-time homemaker, caring for the children and involved in various social and civic activities.  Petitioner did work full- time in a clerical position for approximately two years in a high school.  Other than that position and sporadic part-time employ

ment, petitioner did not work in a permanent, full-time position until she obtained a position with a travel agency.  She ini

tially worked for the agency as a part-time clerk but had been a full-time travel agent for approximately 2½ years at the time of the trial in this matter.  Petitioner's gross income from her travel agency position was $25,368 in 1996 and was $28,540 in 1997.  

After leaving New Orleans, the parties moved to Urbana, Illinois, where respondent performed a three-year oral surgery residency at Carle Hospital.  The parties moved to Bloomington, Illinois, in 1980 when respondent was asked to join the practice of two other oral surgeons.  Respondent joined the Affiliates in Oral and Maxillofacial Surgery (Affiliates), where he continued to practice at the time of this litigation.  Affiliates is a corporation, and respondent is one of three current shareholders.  He owns 55 shares of stock in the corporation.  Respondent's gross income for 1995 was $154,338, for 1996 was $218,152, and for 1997 was $178,285.

After an extensive hearing concerning the income, expenses, and assets of the parties, the circuit court determined the value of disputed assets and, based on those determinations, evenly divided the marital assets.  Respondent received $1,699,436 in assets and was assigned $562,555 in debt.  In addition, he was ordered to pay petitioner $7,239.  Petitioner received $1,122,404 in assets and was assigned no debts.  With the $7,239 payment from respondent, petitioner received $1,129,642, and respondent received $1,129,643 as a net marital property distribution.  In addition, the court ordered respondent to pay petitioner $5,500 per month in maintenance for a period of six years.

Petitioner asserts the circuit court erred with regard to both the property distribution and the maintenance award.  Concerning the property distribution, petitioner claims the court should have valued respondent's shares in Affiliates at $3,400 per share (the price respondent would be entitled to receive upon death, disability, or retirement) rather than $1,000 per share (the price respondent would receive upon voluntary or involuntary termination prior to retirement).  With regard to maintenance, petitioner asserts the court improperly calculated her housing expenses and failed to properly compute respondent's income, resulting in a maintenance award that was too low and of insuffi

cient duration.

II. ANALYSIS

A. Property Distribution

The distribution of marital property rests within the sound discretion of the circuit court.  The circuit court's distribution of assets will only be disturbed on review when no reasonable person would agree with the decision reached by the circuit court.  Any conflicts in testimony concerning the valua

tion of such assets are matters to be resolved by the trier of fact.  
In re Marriage of Lee
, 246 Ill. App. 3d 628, 636-37, 615 N.E.2d 1314, 1321 (1993).

Respondent owns 55 shares of Affiliates, the oral surgery group with which he practices.  The value of the stock is set forth in a buy-sell agreement.  The board of directors of Affiliates (of which respondent is one of three members) sets the value of the stock annually.  The buy-sell agreement places two values on the shares of Affiliates.  Pursuant to the buy-sell agreement in effect at the time of trial, if a member of the corporation leaves the corporation voluntarily or involuntarily prior to retirement, the member's shares will be purchased at $1,000 per share.  Upon retirement, death, or disability a member's shares will be purchased at the rate of $3,400 per share.

Affiliates' accountant testified that the $1,000-per- share price was intended to reflect the hard assets of the corporation, while the $3,400-per-share price was based on a capitalization of earnings and was intended to include the presumed value of goodwill.  He further testified that two doctors had left the corporation prior to retirement and each had received $1,000 per share for their stock.  Another doctor had retired and received $3,200 per share, the retirement price pursuant to the buy-sell agreement at that time.  The circuit court assessed the value of the stock at $1,000 per share for purposes of property distribution.

Respondent was 53 years old at the time of the trial in this matter.  Affiliates' buy-sell agreement would allow respon

dent to retire at age 55 and receive the higher price per share at that time.  Petitioner alleges that because respondent will be able to sell his stock at the higher price in the relatively near future, the circuit court's valuation of the stock at the lower price has provided respondent with a windfall.  Petitioner further notes that in financial disclosure statements prepared before the parties separated, respondent listed the value of the stock at $3,400 per share.  In addition, petitioner asserts the stock should be viewed as similar to pension benefits where a certain age must be attained before vesting.  As a pension benefit that accrued value during the marriage, she argues, the stock should have been valued at the higher price.

As noted above, Affiliates' accountant testified that the $1,000-per-share price was intended to reflect the hard assets of the corporation, while the $3,400-per-share price was intended to include the presumed value of goodwill.  In 
In re Marriage of Zells
, 143 Ill. 2d 251, 255-56, 572 N.E.2d 944, 946 (1991), the supreme court quoted with approval language from 
In re Marriage of Courtright
, 155 Ill. App. 3d 55, 58, 507 N.E.2d 891, 894 (1987), concerning goodwill in a professional practice:

"'Although many businesses possess this intangible known as good will, the concept is unique in a professional business.  The con

cept of professional good will is the sole asset of the professional.  If good will is that aspect of a business which maintains the clientele, then the good will in a profes

sional business is the skill, the expertise, and the reputation of the professional.  It is these qualities which would keep patients returning to a doctor and which would make those patients refer others to him.  The bottom line is that this is reflected in the doctor's income-generating ability.'"

The supreme court noted that professional goodwill is an aspect of income potential.  The goodwill value is therefore reflected in the maintenance and support awards.  "Any additional consideration of goodwill value is duplicative and improper."  
Zells
, 143 Ill. 2d at 256, 572 N.E.2d at 946.  Petitioner re

ceived a maintenance award in this case.  The amount of that award was based, in part, on respondent's income-producing potential.  Respondent's income-producing potential necessarily included the goodwill of his professional practice.  Therefore, had the circuit court, when distributing marital property, assigned a value to the stock that included the goodwill of respondent's professional practice, it would have distributed the value of that goodwill twice.

Petitioner's own expert agreed that the method used by Affiliates to establish the higher retirement price in previous years included the value of goodwill, although he stated he could not determine if the current buy-sell agreement's retirement price included the value of goodwill.  He further testified that he did not make an independent valuation of the Affiliates shares because he believed the buy-sell agreement was binding on the parties.  Had respondent been retired at the time of the hearing in this matter, or had petitioner's expert offered an alternative fair market value of the stock without consideration of the goodwill aspect, the circuit court could have adopted a higher price for the Affiliates shares.  Under the facts as presented at the hearing in this matter, however, we cannot say that the circuit court abused its discretion in valuing those shares at $1,000 per share.

We note respondent's additional argument that the requirement that assets be valued at the time of the dissolution precluded the circuit court from using the $3,400-per-share price.  Respondent correctly cites 
In re Marriage of Rossi
, 113 Ill. App. 3d 55, 60, 446 N.E.2d 1198, 1202 (1983), for the proposition that a court cannot speculate as to future values or events in valuing the property of the parties, and 
In re Marriage of Weiler
, 258 Ill. App. 3d 454, 460-61, 629 N.E.2d 1216, 1220 (1994), for the proposition that a court must value marital assets as they exist on the date of dissolution.  However, we do not find that these opinions would have barred the circuit court from utilizing the $3,400 value for the Affiliates shares.

In 
Rossi
, the circuit court had dissolved the parties' marriage at one hearing and distributed assets, including a closely held corporation, at a separate hearing several months later.  One of the concerns expressed by the reviewing court was that at the hearing on distribution of assets the circuit court considered a corporation balance sheet prepared several months after the dissolution.  Noting that the proper valuation date was the date of dissolution, the reviewing court stated that "facts existing on the valuation date should be the only ones taken into account."  
Rossi
, 113 Ill. App. 3d at 60, 446 N.E.2d at 1202.  The circuit court in 
Weiler
 valued a party's interest in a pension plan as of nine months prior to the date of dissolution.  As in 
Rossi
, the 
Weiler
 opinion holds that the asset should have been valued as of the date of the dissolution.  
Weiler
, 258 Ill. App. 3d at 460-61, 629 N.E.2d at 1220.

In the instant case the facts existing on the date of dissolution showed the value of the Affiliates stock, both with and without the goodwill component.  While respondent could not redeem the stock at the higher value for at least two years, that higher value was a known quantity.  This ability to ascertain the value of the stock distinguishes this matter from the 
Zells
 case, also relied on by respondent.  In 
Zells
, the supreme court found that an attorney's contingent-fee contracts are not subject to valuation, division, or distribution as part of the marital estate.  Citing the appellate court's language in the same case, the supreme court noted that attorneys have no right to receive the contingent fee until the case is disposed of and no assurance the fee will ever be received.  Moreover, the amount of the ultimate fee, which is dependent on an award or settlement, remains highly speculative during the pendency of the case.  
Zells
, 143 Ill. 2d at 252-53, 572 N.E.2d at 945.

The valuation issue in the instant case did not suffer from similar infirmities.  Respondent has a right to receive a known amount in the relatively near future.  Moreover, any suggestion that after many years of an apparently successful practice respondent might voluntarily or involuntarily leave Affiliates before he is eligible to retire, thus requiring redemption of his shares at $1,000 rather than $3,400, involves speculation about future events that these cases caution against
.   With regard to petitioner's remaining arguments on this issue, we find no inconsistency in respondent listing the value of his Affiliates shares as $3,400 per share on financial disclo

sure statements.  That price reflects the current value of those shares, including the value of goodwill.  Finally, we reject petitioner's attempt to characterize these shares as pension benefits that accrued value during the marriage.  Numerous, significant differences exist between a pension plan and this stock ownership governed by the buy-sell agreement.  Most significantly, while federal controls over pension plans would prevent an employee's interest in a vested retirement plan from being decreased, there are no such limitations on the value of the Affiliates stock as set by the buy-sell agreement.  As with any other stock, it may retain its value, it may increase in value, or it may become worthless.  Moreover, respondent did have a pension plan that was distributed as a marital asset by the circuit court.

B. Maintenance

The circuit court awarded petitioner maintenance in the amount of $5,500 per month for a period of six years.  Petitioner claims this award was insufficient with regard to both amount and duration.  The circuit court's judgment in setting maintenance will not be disturbed unless the reviewing court finds it to be an abuse of discretion or against the manifest weight of the evidence.  
In re Marriage of Koberlein
, 281 Ill. App. 3d 880, 884, 667 N.E.2d 695, 699 (1996).

Petitioner claims the circuit court erred in rejecting the maintenance calculations rendered by her expert, which applied a weighted average to respondent's earnings resulting in a maintenance award of $8,300 per month.  In support of this argument, petitioner cites this court's opinions in 
In re Mar

riage of Freesen
, 275 Ill. App. 3d 97, 655 N.E.2d 1144 (1995), and 
In re Marriage of Carpel
, 232 Ill. App. 3d 806, 597 N.E.2d 847 (1992).  Petitioner is mixing issues in this argument.  Her expert used a weighted average to determine respondent's income, and then derived the $8,300-per-month maintenance amount by dividing in half the parties' net monthly income.  
Freesen
 and 
Carpel
 both approved of averaging income in cases where one of the parties' annual income fluctuated significantly.  However, neither of those cases stands for the proposition that the proper amount of maintenance is determined by equalizing the parties' net monthly income.  Petitioner's brief appears to specifically cite 
Freesen
 in support of her argument that maintenance should be determined by an equalization of income.  However, 
Freesen
 is not a maintenance case.  It is a child support case.  

In the instant case, the circuit court heard substan

tial testimony from petitioner's experts as to respondent's income over the last several years and his average income for that time frame.  In the portion of its order concerning mainte

nance, the circuit court stated it had "reviewed the testimony of the experts and the parties, their exhibits and considered arguments of each party regarding the proper amount of mainte

nance."  The fact that the court rejected petitioner's argument for maintenance based on an equalization of net income does not mean that the court failed to consider all relevant evidence concerning respondent's income.

Petitioner next argues that the circuit court erred in establishing the amount of maintenance by equating petitioner's prospective housing expenses with respondent's current housing expenses.  At the time of trial petitioner continued to live in the marital residence on Country Club Place.  Respondent had moved to a home on Deer Cove.  The circuit court made the follow

ing findings with respect to petitioner's housing expenses and other aspects of the maintenance award:

"This court has reviewed the testimony of the experts and the parties, their exhibits[,] and considered the arguments of each party regarding the proper amount of maintenance.  This review has persuaded the court that neither party has presented a correct dollar figure for the maintenance award in this case.  Further, the court has reviewed all of the factors in Section 504 [of the Illinois Mar

riage and Dissolution of Marriage Act (750 ILCS 5/504) (West 1996)] which bear on the amount of the maintenance award and finds that a proper analysis should begin with a determi

nation of the needs of petitioner.  Accordingly, the court finds that the housing ex

penses of petitioner should not be based on the Country Club Place residence, which both parties agree will be sold, but should be based upon a lifestyle similar to that in the Deer Cove residence now owned by respondent.  
In
 
fact
, 
petitioner
 
testified
 
at
 
trial
 
that
 
the
 
Deer
 
Cove
 
residence
 
would
 
meet
 
her
 
needs
, 
and
 
the
 
parties
 
flipped
 
a
 
coin
 
to
 
see
 
who
 
would
 
purchase
 
it
 
prior
 
to
 
the
 
parties
 
sepa

rating
.  Therefore, the court finds that respondent's housing expenses should be used as an accurate figure which would support a lifestyle similar to that enjoyed during the marriage.  However, the court notes that this figure of $3,111 per month includes a generous household decorating line item of $700 per month.  The household expense of $3,111[,] when added to the other expenses noted by petitioner, that being $400 per month for food, $10 per month for cleaning, $33 per month for laundry and cleaning, $131 per month for clothing, $384 per month in medical, $182 per month in auto, $1,187 per month in per

sonal expenses[,] which includes a class C Bloomington Country Club membership, $6 per month in business expenses and $178 per month in insurance, results in a total of $5,622 in reasonable expenses per month."  (Emphasis added.)

Concerning these computations, we initially note that our examination of the record indicates the circuit court may have erred in petitioner's favor.  Respondent's $3,111 monthly household expense estimate includes not only mortgage payments and real estate taxes, but also numerous other expenses related to housing, such as the $700 per month for decorating noted by the circuit court and $200 per month for groceries.  Among the figures added to the $3,111 per month to determine petitioner's total needs is petitioner's estimate of $400 per month for food.  Therefore, the monthly food expenses were counted twice.  How

ever, respondent has not appealed this apparent error.

The benchmark for determination of maintenance is the reasonable needs of the spouse seeking maintenance in view of relevant factors, including the standard of living established during the marriage, the income-producing property of a spouse, if any, and the value of the nonmarital property.  
In re Marriage of Tietz
, 238 Ill. App. 3d 965, 972, 605 N.E.2d 670, 676 (1992).  Our review of the record indicates the circuit court carefully considered the relevant evidence on the issue of maintenance and fashioned a maintenance award designed to meet the reasonable needs of petitioner in maintaining the standard of living estab

lished during the marriage.

Moreover, petitioner testified at trial that she intends to sell the marital residence.  In fact, it had already been placed on the market at the time of trial.  She testified that the Deer Cove residence would meet her needs and that she probably would have purchased that residence had she won the coin toss instead of respondent.  Petitioner's own experts assumed a figure of $1,500 per month in mortgage payments and real estate taxes for petitioner as well as respondent when making calcula

tions to determine the parties' disposable income and peti

tioner's financial needs.  In the light of this evidence, we cannot say that the circuit court abused its discretion in applying the $3,111-per-month housing expense when determining petitioner's needs for maintenance purposes.

The circuit court ordered respondent to pay maintenance for a period of six years.  The court awarded maintenance for a six-year term because petitioner will be able to withdraw inter

est income from the 401(k) assets awarded to her in approximately six years.  The court found that petitioner will be able to withdraw between $3,000 and $8,000 per month without ever invad

ing the principal.  (The $3,000 amount assumes a 5% growth rate over the next 6 years, while the $8,000 amount assumes a 10% growth rate.)  The court further noted that it was likely based upon the evidence that respondent will retire sometime within the next six to eight years and upon retirement may well have sub

stantially less income.

In objecting to the duration of maintenance, petitioner cites numerous cases for the proposition that a party need not sell assets or capital to maintain the standard of living estab

lished during the marriage, particularly when the other party has sufficient income to meet both parties' needs.  While this is true, it is also irrelevant.  The circuit court's order does not contemplate petitioner having to sell assets.  Rather, that order specifically refers to the expected range of income from the interest only on the 401(k) investments.  

Additionally, we find that it was appropriate for the circuit court to consider the anticipated retirement of respon

dent in determining the duration of maintenance.  As the court stated in 
In re Marriage of Puls
, 268 Ill. App. 3d 882, 888, 645 N.E.2d 525, 529-30 (1994), "it is not unfair or an abuse of discretion for the trial court to tie the duration of petitioner's maintenance to the date of her former husband's retire

ment."

The duration of a maintenance award is a matter within the sound discretion of the circuit court and will not be dis

turbed absent an abuse of discretion.  
Puls
, 268 Ill. App. 3d at 887, 645 N.E.2d at 529; 
In re Marriage of Werries
, 247 Ill. App. 3d 639, 652, 616 N.E.2d 1379, 1390 (1993).  Petitioner was awarded assets in addition to the 401(k) monies and was assigned no debts.  She currently has a net estate worth in excess of $1,100,000.  That estate will undoubtedly grow over the next six years, during which time petitioner will also earn income and will receive maintenance payments.  From her 401(k) investments alone, petitioner will be able to begin to withdraw in six years at least $3,000 per month and perhaps as much as $8,000 per month without ever touching the principal.  Given these facts, we find that the circuit court's limitation of maintenance payments to a period of six years was not an abuse of discretion.

III. CONCLUSION

For all of the reasons stated, we affirm.

Affirmed.

COOK, J., concurs.

GARMAN, J., concurs in part and dissents in part. 

JUSTICE GARMAN, specially concurring in part and dissenting in part:

I agree with the majority's analysis on the property division.  The majority, however, concludes that $5,500 per month in maintenance is sufficient to meet the reasonable needs of the petitioner in maintaining the standard of living established during the marriage.  I disagree.  

In 
In re Marriage of Dunlap
, 294 Ill. App. 3d 768, 773, 690 N.E.2d 1023, 1026 (1998), this court considered "reasonable needs" and the higher standard of "lifestyle needs."  We noted that "'the resources of the parties dictate whether they can maintain their life-style after dissolution.'"  
Dunlap
, 294 Ill. App. 3d at 773, 690 N.E.2d at 1026, quoting 
Werries
, 247 Ill. App. 3d  at 652, 616 N.E.2d at 1390.  We then observed that, in 
Tietz
, this court harmonized the two concepts of reasonable needs and lifestyle by "stating that the 'benchmark for determination of maintenance is the 
reasonable
 
needs
 of the spouse seeking maintenance 
in
 
view
 
of
 
the
 
standard
 
of
 
living
 established during the marriage.'"  (Emphasis in original.)  
Dunlap
, 294 Ill. App. 3d at 773, 690 N.E.2d at 1027, quoting 
Tietz
, 238 Ill. App. 3d at 972, 605 N.E.2d at 676.  

Although the majority invokes this "benchmark," I conclude it fails to give proper consideration to the parties' predissolution standard of living and the disproportionate impact of the dissolution on petitioner's lifestyle.  

In 
Dunlap
, we concluded that if the petitioner's income, including the ordered maintenance, is insufficient to meet her lifestyle needs and, if the respondent has the means to provide for her continuing her prior lifestyle without compromis

ing his own needs, she is entitled to maintenance in an amount sufficient to support her predissolution lifestyle, unless other factors make such an award unreasonable.  
Dunlap
, 294 Ill. App. 3d at 774, 690 N.E.2d at 1027.

The facts in 
Dunlap
 were quite similar to the present case.  The Dunlaps had been married for 26 years.  The wife had only minimal work experience outside the home.  The undisputed facts revealed that her standard of living had, on the whole, been diminished since the divorce and his had not suffered comparably.  
Dunlap
, 294 Ill. App. 3d at 773, 690 N.E.2d at 1026.   The majority rejects petitioner's reasoning that the amount needed to support her lifestyle may be calculated by taking one-half of the parties' net monthly income.  Yet, we employed precisely the same reasoning in 
Dunlap
:

"The parties' marital lifestyle was supported by almost $100,000 per year in after-tax income.  Using one-half of their 1995 net income as a ballpark estimate of [predissolution] lifestyle, each spouse re

quires $48,669, or $4,056 per month, to main

tain a similar standard of living."  
Dunlap
, 294 Ill. App. 3d at 774, 690 N.E.2d at 1027.

We then compared his monthly income and expenses to hers and concluded that she suffered "a substantial lifestyle deficit."  
Dunlap
, 294 Ill. App. 3d at 774, 690 N.E.2d at 1027.  Because the respondent's monthly excess of income over expenses would allow him to contribute to petitioner's standard of living without impairing his own, we remanded to the trial court to give proper consideration to the standard of living during the marriage and to order maintenance accordingly.  
Dunlap
, 294 Ill. App. 3d at 774, 690 N.E.2d at 1027.

In the instant case, petitioner's "ballpark" estimate of the cost of maintaining the predissolution lifestyle is $8,300 per person per month.  In addition, certain expenses, such as country club membership, were paid by the corporation, which will presumably continue to support respondent ex-husband's member

ship.  Petitioner will have to pay for her own.  The predis­

solution standard of living also included the ability to build assets, rather than to consume them.  Petitioner's income from employment is a small fraction of respondent's and, as a result, she will have to use the interest from her investments to support herself.  If petitioner wishes to live in her predissolution style, she will be required to invade capital.  The respondent will be able to continue to reinvest his investment income so that his estate will continue to grow.  

In many cases, the resources of the parties are such that neither person can maintain the predissolution lifestyle after dissolution.  In the instant case, however, the resources are available for both parties to continue to live very well.  Given the disparity in income and the length of the marriage, as well as the considerable assets accumulated during the marriage, it is not necessary for petitioner to choose between a signifi

cant diminishment in lifestyle and invading capital.  

In my view, the amount of maintenance ordered, $5,500 per month, may be sufficient for her reasonable needs, but does not meet the standard set in 
Tietz
 and 
Dunlap
.