*In re* MARRIAGE OF EARL M. SCHNEIDER, Petitioner-Appellant and Cross-Appellee, and JODI ANN SCHNEIDER, Respondent-Appellee and Cross-Appellant.

Second District   No. 2—02—0894

Opinion filed October 24, 2003.

Stanley F. Kaplan, of Chicago, for appellant.

Marshal P. Morris, of Marshal P. Morris, Ltd., of Park Ridge, for appellee.

JUSTICE GILLERAN JOHNSON delivered the opinion of the court:

The respondent, Jodi Ann Schneider, appeals from the March 4, 2002, order of the circuit court of Lake County dissolving her marriage to the petitioner, Earl M. Schneider. On appeal, Jodi argues that the trial court erred in (1) failing to require Earl to maintain a life insurance policy naming his children as the irrevocable beneficiaries; (2) valuing Earl's dental practice; and (3) failing to award her attorney fees. We affirm in part and reverse in part.

The parties were married on August 25, 1985. Three children were born to the marriage: Ashley, born August 4, 1986; Justin, born February 14, 1989; and Jordan, born December 31, 1991. Earl filed a petition for dissolution of marriage on September 15, 2000. On this date, both he and Jodi were 40 years old. Earl was self-employed as a dentist and Jodi was employed part-time as a certified public accountant (CPA). The parties' marriage was dissolved on March 4, 2002, after 16 years of marriage. The parties agreed that Jodi would have sole care and custody of their three children.

The trial court conducted a hearing on the petition for dissolution between September 13, 2001, and October 18, 2001. At this time, Jodi and the parties' three children resided in the marital residence and Earl resided in an apartment. On September 17, 2001, the parties reached a partial settlement agreement. In this agreement, Earl's gross annual income was stipulated to be $325,000, with a net income of $195,000. Based on this income, child support was to be paid as follows: $5,400 per month until Ashley attained majority or graduated high school; $4,062.50 thereafter until Justin attained majority or

graduated high school; and $3,250 per month thereafter until Jordan attained majority or graduated high school. Earl and Jodi both waived maintenance, although Jodi reserved the right to seek a disproportionate share of the assets.

Although the parties reached a partial settlement, they continued to present the trial court with the issues that remained in dispute. Among the issues submitted for trial court determination were (1) the valuation of Earl's dental practice; (2) requests from both parties for contribution to attorney fees; and (3) the allocation of marital property.

At trial, Jodi testified that she graduated college in 1981 and began working as a staff accountant for $15,200 per year. She worked full-time until August 1986, when she had the parties' first child. Although Earl fought her attempts to go back to work, she and Earl compromised, and she went back to work part-time. She worked about 20 hours per week until the parties' second child was born in February 1989. After that, she stopped working at Earl's request.

Beginning in August 1986, Jodi worked at Earl's dental office and did all of the accounting, bookkeeping, billing, and receivables. She worked at the dental office through the summer of 2000. She learned the computer systems in the business and every office function at the front desk. She explained that she learned these tasks because Earl wanted her to be able to take over in the event someone quit.

In September 1998, when the parties' youngest child went to first grade, Jodi went back to work as an accountant for the same firm and worked about 15 to 20 hours per week. She testified that Earl again put pressure on her to quit working. Consequently, she gave up all her clients, except for three. She worked for one client five hours every three months, the second client 20 hours per year, and the third client one hour every month. The rest of her time she devoted to taking care of the parties' three children. Jodi finally testified that, had she continued to work full-time, she could have become a manager and partner.

Earl agreed to stipulate to Jodi's homemaker rights pursuant to section 503 of the Illinois Marriage and Dissolution of Marriage Act (the Act) (750 ILCS 5/503 (West .2000)). Earl testified that the dental practice was purchased during the parties' marriage with marital monies in 1987 from a Dr. Taub. The total purchase price was $550,000. Dr. Taub continued to work in the practice for 2½ years. Additionally, Earl testified that there was a covenant not to compete between Dr. Taub and himself that limited Dr. Taub's ability to open a dental practice within a five-mile radius. Earl testified that the gross income of the dental practice was about $800,000 per year. He did not lose any of Dr. Taub's patients when he purchased the practice.

Both parties presented evidence regarding the valuation of Earl's dental practice. Stephen Mareta testified on behalf of Earl as to the value of the dental practice. Mareta is a CPA with a master's degree in taxation and a bachelor's degree in accounting. Mareta has, on several occasions, served as an expert to determine the existence and value of goodwill in professional practices. Mareta concluded that the fair market value of Earl's dental practice was $346,300. Mareta attributed $35,000 to fixed assets and $311,300 to goodwill. He attributed all of that goodwill to personal goodwill and none to enterprise goodwill. The $35,000 in fixed assets included property and equipment but excluded cash on hand, accounts receivable, cash surrender value of life insurance, and loans due from officers.

Bruce Richman testified as an expert witness on behalf of Jodi. Richman has spent 20 years in public accounting and his areas of concentration include litigation and business valuation. Richman is a CPA with master's degrees in taxation and accounting and a bachelor's degree in business. Richman estimated the fair market value of Earl's dental practice at $481,000. The value of the tangible assets, which included cash, accounts receivable, furniture and equipment, cash surrender value of insurance, and inventory, totaled $144,413. The remainder of the value of the dental practice, $336,587, was attributed to intangible assets, such as goodwill.

On January 23, 2002, the trial court entered its findings and decision. The trial court valued Earl's dental practice at $38,330; $8,000 in inventory and $30,330 in furniture and equipment. The trial court excluded accounts receivable, cash on hand, cash surrender value of life insurance, and loans due from officers. Furthermore, the trial court found that no enterprise goodwill was proven. Consequently, the trial court determined that any goodwill that existed in Earl's dental practice was personal goodwill. However, the trial court held that, pursuant to case law, personal goodwill should not be included in determining the fair market value of Earl's dental practice.

Furthermore, the trial court considered the factors in section 503 of the Act (750 ILCS 5/503 (West 2000)), and the allocation of marital property and debt, and determined that each party would be responsible for his or her own attorney fees. The trial court also allocated the marital assets. The trial court considered the factors in section 503(d) of the Act. The trial court determined that the factors weighing heavily in favor of a disproportionate allocation were (4), the duration of the marriage; (11), the reasonable opportunity of each spouse for future acquisition of capital assets and income; and (10), whether the apportionment was in lieu of or in addition to maintenance. 750 ILCS 5/503(d)(4), (d)(10), (d)(11) (West 2000). As such, the

trial court allocated 67% of the marital assets to Jodi and 33% to Earl. This resulted in an approximate distribution of $326,000 to Jodi and $161,000 to Earl.

Thereafter, on March 4, 2002, a judgment for dissolution of marriage was entered incorporating the trial court's findings and decision. Upon denial of his motion for reconsideration, Earl filed a timely notice of appeal. Jodi subsequently filed a timely notice of cross-appeal. On September 10, 2002, on Earl's motion, this court dismissed Earl's notice of appeal. As such, the only issue that remains is Jodi's cross-appeal.

■ Jodi's first contention on appeal is that the trial court erred in not requiring Earl to maintain a life insurance policy naming his children as the irrevocable beneficiaries. It is well established that a trial court may require the supporting spouse to secure the continuation of such support by maintaining certain life insurance policies and naming the children as irrevocable beneficiaries of such policies. *In re Estate of Downey*, 293 Ill. App. 3d 234, 237 (1997). Under section 503(g) of the Act (750 ILCS 5/503(g) (West 2000)), a life insurance policy could be required under the proper circumstances to secure the support, education, maintenance, and general welfare of a party's children. *In re Marriage of Rogliano*, 198 Ill. App. 3d 404, 416 (1990); *In re Marriage of Dulyn*, 89 Ill. App. 3d 304, 310 (1980). However, such an obligation is inappropriate in the absence of evidence showing a need to protect the interests of the children. *Atkinson v. Atkinson*, 87 Ill. 2d 174, 179 (1981).

■ Moreover, under section 510(d) of the Act, the obligation to provide child support does not terminate on the death of the parent obligated to support or educate the children. 750 ILCS 5/510(d) (West 2000); *In re Parentage of Janssen*, 292 Ill. App. 3d 219, 226 (1997). A parent's estate is liable for the deceased parent's support obligation to the extent just and appropriate in the circumstances, and the court may determine at the time of the dissolution of marriage the amount of support for which a deceased parent will be held liable. *Rogliano*, 198 Ill. App. 3d at 416. Thus, under section 510(d) of the Act, a court may order the supporting parent to maintain a life insurance policy for the benefit of the children, without a finding of special circumstances, to insure the fulfillment of the support obligation should the supporting parent die. *In re Marriage of Olson*, 223 Ill. App. 3d 636, 650-51 (1992). However, the determination of the proper amount of child support lies within the sound discretion of the trial court and will not be set aside unless contrary to the manifest weight of the evidence. *Dulyn*, 89 Ill. App. 3d at 308.

■ In the present case, Earl has provided for the needs of his

children since he filed for the dissolution of marriage. Additionally, there was no indication that he would not continue to provide for the needs of his children in the future. In fact, there was no evidence presented at trial, of Earl's inability or unwillingness to make support payments, that would justify a finding that the establishment of a life insurance policy under section 503(g) of the Act (750 ILCS 5/503(g) (West 2000)) was necessary. See *In re Marriage of Hobson*, 220 Ill. App. 3d 1006, 1013-14 (1991).

Furthermore, under section 510(d) of the Act (750 ILCS 5/510(d) (West 2000)), it is clear that Earl's estate would be liable for future support "to the extent just and appropriate under the circumstances" should he otherwise fail to provide for the children. Although section 510(d) allows a trial court to order a supporting parent to maintain a life insurance policy, even without a finding of special circumstances, such an order lies within the sound discretion of the trial court. *Dulyn*, 89 Ill. App. 3d at 308. Consequently, since there is no reason to believe that Earl, or his estate, will not be able to provide the mandated child support, we cannot say the trial court's decision not to require Earl to maintain a life insurance policy naming his children as the irrevocable beneficiaries was against the manifest weight of the evidence. See *Dulyn*, 89 Ill. App. 3d at 308.

■ Jodi next argues that the trial court erred in its valuation of Earl's dental practice and, consequently, in its distribution of the marital property. Specifically, Jodi argues that the trial court erred in not including goodwill, accounts receivable, loans to officers, cash surrender value in insurance policies, and cash on hand in its valuation of Earl's dental practice. We agree. The Act provides for equitable distribution of all marital property upon dissolution of marriage. 750 ILCS 5/503 (West 2000). The Act creates a rebuttable presumption that all property acquired after marriage is "marital property." *In re Marriage of Stone*, 155 Ill. App. 3d 62, 72 (1987). The business interest of a spouse acquired subsequent to marriage constitutes "marital property" subject to equitable distribution upon dissolution. *Stone*, 155 Ill. App. 3d at 72. In the present case, it is undisputed that Earl's dental practice was acquired after the marriage and is marital property.

The trial court's written findings and decision reveal that, in determining the value of Earl's dental practice, it included enterprise goodwill but excluded personal goodwill, accounts receivable, cash on hand, cash surrender value in insurance policies, and loans to officers. Although enterprise goodwill was considered, the trial court was not satisfied that it was proven and therefore gave it no value. The trial court excluded personal goodwill because it believed that, pursuant to

case law, personal goodwill should not have been included in determining the value of the dental practice.

■ Goodwill is the value of a business or practice that exceeds the combined value of the physical assets. *In re Marriage of Talty*, 166 Ill. 2d 232, 238 (1995). Enterprise goodwill has been defined as any value of the practice as a going concern, independent of the tangible assets and the income potential of the practitioner. *Talty*, 166 Ill. 2d at 238-39. Personal goodwill, alternatively referred to as professional goodwill, is the goodwill that is personal to the practitioner, depends on his efforts and will cease when his involvement with the practice ends. *Talty*, 166 Ill. 2d at 240.

■ It has been established that a fair and just disposition of marital property requires considering goodwill in valuing a professional corporation. *In re Marriage of Feldman*, 199 Ill. App. 3d 1002, 1005-06 (1990); *In re Marriage of Rubinstein*, 145 Ill. App. 3d 31, 37 (1986). However, in *In re Marriage of Zells*, 143 Ill. 2d 251 (1991), our supreme court held that goodwill, which represents the ability to acquire future income, is not to be considered a divisible marital asset. *Zells*, 143 Ill. 2d at 256; *In re Marriage of Trull*, 254 Ill. App. 3d 34, 40 (1993). The court concluded that goodwill is already reflected in the following factors, which the trial court must consider in reaching a just property distribution under section 503(d) of the Act:

> " '[T]he relevant economic circumstance of each spouse when the division of property is to become effective[,] *** [the] occupation, amount and sources of income, vocational skills, [and] employability *** of each of the parties *** [and] the reasonable opportunity of each spouse for future acquisition of capital assets and income.' " *Zells*, 143 Ill. 2d at 255, quoting Ill. Rev. Stat. 1989, ch. 40, pars. 503(d)(4), (d)(7), (d)(10).

See also *Trull*, 254 Ill. App. 3d at 40. Consequently, the *Zells* court held that goodwill is reflected in the maintenance and support awards. *Zells*, 143 Ill. 2d at 256. Therefore, "[t]o figure goodwill as a divisible marital asset *and* a factor in examining the husband's income potential [for a determination of maintenance and support] would be duplicative and improper." (Emphasis in original.) *Trull*, 254 Ill. App. 3d at 40; *Zells*, 143 Ill. 2d at 256.

As such, *Zells* simply provides that personal goodwill, if used as a factor in calculating income potential, on which the maintenance and support awards are based, cannot also be used as a divisible marital asset. *In re Marriage of Head*, 273 Ill. App. 3d 404, 409 (1995). Moreover, in *Zells*, the supreme court did not say goodwill cannot be included when valuing a corporation; rather, the court held that personal goodwill is not subject to valuation, division, or distribution

as a marital asset, but should instead be reflected in maintenance and support awards. *In re Marriage of Phillips*, 244 Ill. App. 3d 577, 590 (1993). Consequently, if goodwill is not considered as part of a spouse's income-generating ability relative to a maintenance award, it may be considered in the valuation of a professional practice as a divisible marital asset. See *In re Marriage of Claydon*, 306 Ill. App. 3d 895, 899 (1999) (including goodwill in the value of the professional practice was improper only because petitioner received a maintenance award); *In re Marriage of Brenner*, 235 Ill. App. 3d 840, 847 (1992) (trial court should consider goodwill *either* when valuing the closely held corporation itself or when evaluating a spouse's income-generating ability to determine maintenance payments).

■ We hold that the trial court erred in not including personal goodwill in the valuation of Earl's dental practice. Personal goodwill should have been considered *either* in the valuation of Earl's dental practice or in the valuation of his income-earning potential for a determination of a proper maintenance award. See *Claydon*, 306 Ill. App. 3d at 899; *Brenner*, 235 Ill. App. 3d at 847. In the present case, as part of the partial settlement agreement, Jodi waived maintenance. As such, Earl's income-generating ability relative to a maintenance award was not a consideration before the trial court. Consequently, personal goodwill should have been included when valuing Earl's dental practice. See *Brenner*, 235 Ill. App. 3d at 847.

The dissent suggests that the inclusion of personal goodwill in the valuation of Earl's dental practice is duplicative and improper because the goodwill is reflected in the child support award. However, we note that *Zells* specifically states that personal goodwill is to be reflected in the maintenance *and* support awards. *Zells*, 143 Ill. 2d at 256. As such, *Zells* does not apply when a maintenance award has been waived. Consequently, if personal goodwill is reflected only in the child support award, an exclusion of this goodwill from the valuation of Earl's dental practice would result in an unfair and unjust distribution of marital property. The Act specifically provides for an equitable distribution of all marital property upon dissolution of marriage. See 750 ILCS 5/503 (West 2000). Therefore, since the personal goodwill in Earl's dental practice cannot be reflected in a waived maintenance award, the inclusion of goodwill in the valuation of his dental practice as a divisible marital asset is not duplicative.

■ ■ Also, in relation to the valuation of Earl's dental practice, Jodi argues that the trial court erred in not including accounts receivable, cash on hand, cash surrender value in insurance policies, and loans to officers. A number of courts have adopted a method for valuation of a partnership or professional practice which includes consideration of:

"(a) Fixed assets which include cash, furniture, equipment, supplies and library;

(b) Other assets, including properly aged accounts receivable, costs advanced with due regard for their collectibility; ***

(c) Goodwill of the practitioner in his business as a going concern; and

(d) Liabilities of the practitioner related to his business." *Stone*, 155 Ill. App. 3d at 72.

*Rubenstein*, 145 Ill. App. 3d at 35-36 (valuation of medical corporation); *In re Marriage of Davis*, 131 Ill. App. 3d 1065, 1069 (1985) (valuation of corporate law firm); *In re Marriage of Wilson*, 110 Ill. App. 3d 809, 813-14 (1982) (valuation of timber business partnership). As such, accounts receivable are business assets and must be included in the valuation of Earl's dental practice. See *In re Marriage of Tietz*, 238 Ill. App. 3d 965, 976-77 (1992); *Feldman*, 199 Ill. App. 3d at 1005. Furthermore, it is clear that fixed assets, such as cash, and other assets are to be included in the valuation of a professional practice. *Stone*, 155 Ill. App. 3d at 72. Therefore, the trial court also erred in not including cash on hand, cash surrender value in insurance policies, and loans to officers in determining the fair market value of Earl's dental practice. Consequently, we reverse the trial court's property distribution and remand for a redistribution which includes the items of marital property erroneously omitted from the original judgment.

As her final contention on appeal, Jodi argues that the trial court erred in not ordering Earl to contribute to her attorney fees. She argues that Earl, whose dental practice generates a gross income of about $800,000 per year, has a large income-producing estate and has the financial ability to pay her attorney fees. Jodi argues that her earning potential is very small in comparison, and that the payment of her attorney fees of $56,000 and her expert fees of $12,000 would significantly deplete her assets and undermine her financial stability.

Attorney fees are the primary obligation of the party for whom the services are rendered in a dissolution of marriage proceeding. *In re Marriage of McCoy*, 272 Ill. App. 3d 125, 130 (1995). The payment of attorney fees is governed by section 508(a) of the Act (750 ILCS 5/508(a) (West 2000)). Section 508(a) permits the trial court to require one spouse to contribute to the reasonable attorney fees and costs of the other spouse. 750 ILCS 5/508(a) (West 2000). The propriety of an award of attorney fees is dependent upon a showing by the party seeking them of an inability to pay and a demonstration of the ability of the other spouse to do so. *In re Marriage of Morse*, 240 Ill. App. 3d 296, 312 (1993). This ability or inability to pay must be judged by the

relative position of the parties to each other and not by some objective standard. *In re Marriage of Courtright*, 155 Ill. App. 3d 55, 61 (1987). An award of attorney fees is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *Morse*, 240 Ill. App. 3d at 312.

We do not believe the trial court abused its discretion in not ordering Earl to contribute to Jodi's attorney fees. The trial court found that both parties were equally unreasonable, litigious, and quarrelsome throughout the divorce proceedings, resulting in an unnecessarily expensive divorce. The trial court considered the section 503 factors (750 ILCS 5/503 (West 2000)), relating to the allocation of marital property and debt, and found it equitable that both parties be responsible for their own legal fees. Furthermore, although Jodi's earning potential pales in comparison to Earl's, she has failed to show an inability to pay her own attorney fees. See *McCoy*, 272 Ill. App. 3d at 132 (ability to pay does not mean ability to pay without pain or sacrifice). Moreover, Jodi was awarded a disproportionate share of the marital assets, worth approximately $326,000. Consequently, we cannot say the trial court's determination that Jodi was able to pay her own attorney fees was an abuse of discretion.

For the foregoing reasons, we affirm the judgment of the circuit court of Lake County in not requiring Earl to maintain a life insurance policy naming his children as irrevocable beneficiaries or to contribute to Jodi's attorney fees. However, the judgment of the circuit court of Lake County excluding personal goodwill, accounts receivable, cash on hand, cash surrender value in life insurance policies, and loans to officers in the valuation of Earl's dental practice is reversed, and this cause is remanded for additional proceedings consistent with this opinion.

Affirmed in part and reversed in part; cause remanded.

GROMETER, J., concurs.

JUSTICE BOWMAN, dissenting in part:
I respectfully dissent. In particular, I disagree with the majority's conclusion that the trial court erred in not including personal goodwill in the valuation of Earl's dental practice. The result reached by my colleagues appears to hinge on the fact that Jodi waived maintenance. However, I believe that including personal goodwill in the valuation of the dental practice is contrary to the language expressed by our supreme court in *Zells*, 143 Ill. 2d at 255-56.

In this case, the parties reached a partial settlement agreement in

which both waived maintenance. In waiving maintenance, Jodi reserved the right to seek a disproportionate share of the assets. Consequently, the trial court considered Jodi's decision to waive maintenance as a factor in awarding her 67% of the marital assets. Another factor the court considered in awarding Jodi a higher percentage of the assets was the future income-generating ability of each spouse. For this reason, I disagree with the majority's assertion that Earl's income-generating ability relative to a maintenance award was not a consideration before the trial court. Not only was it a consideration, it was one of the factors the court relied upon in awarding Jodi a disproportionate share of the assets. More important in terms of the outcome of this case, however, is the issue of child support. Pursuant to the parties' agreement, Earl agreed to pay $5,400 per month until Ashley attained majority or graduated high school; $4,062.50 thereafter until Justin attained majority or graduated high school; and $3,250 per month thereafter until Jordan attained majority or graduated high school. As the majority states, child support in this case was based on Earl's income from the dental practice. Because personal goodwill represents the ability to acquire future income (*Trull*, 254 Ill. App. 3d at 40), *Zells* recognized that the goodwill value of a business is necessarily reflected in maintenance and support awards. *Zells*, 143 Ill. 2d at 256. For this reason, to figure goodwill as a divisible marital asset *and* as a factor in examining income potential would be to double count and to reach an erroneous valuation. *Zells*, 143 Ill. 2d at 256. Here, it is clear that the personal goodwill value of Earl's dental practice was reflected in the support award. Consequently, "[a]ny additional consideration of goodwill value is duplicative and improper." *Zells*, 143 Ill. 2d at 256.

Curiously, the majority in this case refuses to consider child support relative to the issue of goodwill. Instead, it claims that *Zells* does not apply when a maintenance award has been waived. The language in *Zells*, however, does not support the majority's distinction. If our supreme court had intended to limit the consideration of personal goodwill only to cases involving an award of maintenance, it easily could have done so.

Moreover, in focusing exclusively on the issues of maintenance and Jodi's decision to waive it, the majority ignores what Jodi did, in fact, receive. As mentioned previously, the record is clear that Jodi received a disproportionate amount of the marital property as a result of Earl's future income-generating ability and as a result of her decision to waive maintenance. In addition, Jodi received child support based on Earl's future income-generating ability. The fact that Jodi received 67% of the assets offsets a maintenance award. Consequently, the

simple fact that Jodi waived maintenance in this case should not be dispositive of the issue of goodwill.

In sum, I believe that the majority's decision to include personal goodwill in the valuation of the dental practice results in the very double counting prohibited in *Zells*. For these reasons, I would affirm the trial court on this issue.