831 So.2d 1175 (2002)
Paulette Boyles UGLEM, Appellant,
v.
Arvid UGLEM, Appellee.
No. 2001-CA-00466-COA.
Court of Appeals of Mississippi.
October 29, 2002.
*1176 Al Shiyou, Hattiesburg, attorney for appellant.
Leonard B. Melvin, Jr., Laurel, attorney for appellee.
Before McMILLIN, C.J., MYERS, and CHANDLER, JJ.
McMILLIN, C.J., for the court.
¶ 1. Arvid Uglem was granted a divorce from his wife, Paulette Boyles Uglem, on the ground of habitual cruel and inhuman treatment. During the divorce proceedings, the parties were unable to agree on the interpretation of their pre-nuptial agreement. Further, they disagreed on the division of marital property. Dissatisfied with the chancellor's ruling on these matters, Mrs. Uglem has appealed to this Court claiming that the chancellor was clearly erroneous in his findings.
¶ 2. Mrs. Uglem specifically claims that (a) the chancellor erred in not fully recognizing the terms of the pre-nuptial agreement, (b) the chancellor erred in his division of marital assets, (c) the chancellor failed to make proper findings of fact and conclusions of law in accordance with the necessary factors, and (d) the chancellor failed to give Mrs. Uglem proper credit for funds she invested in the marital home. Finding no reversible error in the chancellor's ruling, we affirm.

I.

Facts
¶ 3. Arvid and Paulette Uglem were married in New York in 1994. Prior to the marriage, the couple entered into a pre-nuptial agreement that we will later describe.
¶ 4. In 1995, the couple moved to Wayne County, Mississippi and began construction *1177 on a new house. There they resided until their separation in 1997. The house was built upon five acres of land given to the couple by Mrs. Uglem's mother, the land having a value of about $5,000. Mr. Uglem paid for the construction of the house from his own funds of $41,000 that he had saved prior to his marriage and from two individual gifts of $83,000 and $2,600 furnished to him by his father. Mrs. Uglem paid the house notes for a twenty-four month period prior to the couple's separation. Those payments totaled $13,165.44.
¶ 5. In July 1997, Mr. Uglem filed for divorce on the grounds of habitual cruel and inhuman treatment, which was granted after an evidentiary hearing in July 1998. Mrs. Uglem's counterclaim for divorce alleging the same grounds against her husband was denied. The chancellor ordered that the marital home and its remaining mortgage were to be transferred into the sole possession of Mr. Uglem, with Mrs. Uglem to be given a sum of $10,275 for her equitable share in the home. All other personal property had been divided, as agreed between the parties.
¶ 6. No children were born to the Uglems during this marriage.

II.

Standard of Review
¶ 7. Our review of the chancellor's decisions is limited. The factual determinations, if supported by substantial evidence and not indicating arbitrariness or caprice, will be upheld. McNeil v. Hester, 753 So.2d 1057, 1063 (¶ 21) (Miss.2000). Legal issues, however, are reviewed de novo. Consolidated Pipe & Supply Co., Inc. v. Colter, 735 So.2d 958 (¶ 13) (Miss. 1999).

III.

The Pre-Nuptial Agreement
¶ 8. Mrs. Uglem asserts that the chancellor erred in his interpretation of the pre-nuptial agreement. That agreement stated that in the event of divorce, Mr. Uglem would retain sole possession of the marital home if he had paid for its construction with his own money. The chancellor in his order stated that he would "recognize the overall validity" of the agreement as to funds brought to the marriage remaining separate. He then said, "however, as to item (2), even though the majority of the investment in the marital home was made by Arvid, certain contributions were made by Paulette." Mrs. Uglem on appeal characterizes this as a failure fully to enforce the agreement. We disagree, though there might be a need to define terms. The second item of the 1994 agreement provided that if the "house is built with Arvid Uglem's money, he will keep house should marriage end in divorce, and no equity will be paid to Paulette Boyles." The chancellor in effect determined that the house was not "built with Arvid Uglem's money," since even though he paid about 85% of what the couple had financially put into the house, he did not pay for all of it.
¶ 9. Thus the chancellor determined each party's equitable interest in the home by determining the total payments for the house so far made by the couple, calculating each spouse's fraction of that total, then awarding the equity in the house on that basis. Since Mr. Uglem was receiving title to the house, he was ordered to pay his wife in cash the amount that resulted from the computation, less offsets and adjustments that we find were appropriate.
¶ 10. The agreement was to give the husband the house without any equity to the wife only if he "built" it. We find no *1178 error in the chancellor's working his way through the meaning of that term, and the effect of the finding that Mr. Uglem did not entirely build it.
¶ 11. Mrs. Uglem's claim of error is essentially that since her husband had not totally built the house, that this provision of the pre-marital agreement was completely inapplicable. A court of equity seeks equity. Out of this short marriage (two troubled years), a substantial investment was made in the marital home, a home that the couple in advance of marriage determined should under certain conditions belong to the husband after a divorce. Making adjustments for the facts, the chancellor equitably divided this asset. Whether he did it "under the agreement" or outside the agreement does not affect our affirming of his reasonable approach to this decision.

IV.

Division of Other Marital Assets
¶ 12. This issue focuses on the same complaint as what we have just discussed, but from a different perspective. Mrs. Uglem believes that the $83,000 from Mr. Uglem's father was a marital gift to the couple and therefore should be considered a marital asset. That money was used to assist in the construction of the home. Separate property, including cash, brought to the marriage can retain its separate character or instead become marital property, depending on the uses to which the property is put and the intentions of both parties. Franks v. Franks, 759 So.2d 1164 (¶ 17) (Miss.1999).
¶ 13. We find that when the pre-marital agreement established that if Mr. Uglem "built" the house, the parties were recognizing that the husband was expected to pay for their residence. If he drew money from his own accounts that had been deposited before the marriage, obtained loans or gifts from family members, or otherwise used funds that were separate property, this agreement accepted that the husband at divorce was entitled to the house and Mrs. Uglem was not entitled to any equity. Focusing on the gift from Mr. Uglem's father does not alter the decision we already made regarding the validity of the chancellor's division of this asset at the time of divorce.
¶ 14. The $83,000 was given to Mr. Uglem by his father and had been maintained in a separate bank account. Inter vivos gifts and inheritances are separate property until co-mingled. Heigle v. Heigle, 654 So.2d 895, 897 (Miss.1995). It indeed would be a fair characterization that once investing that money in the construction of the marital home, that it was converted into marital property. Id. Regardless of those possible effects, when considering the pre-marital agreement and the brevity of this marriage, simply returning the parties to their respective preconstruction financial position vis-à-vis the house was equitable.

V.

Application of the Ferguson Factors
¶ 15. Mrs. Uglem next asserts that the chancellor erred in his analysis of the factors related to the division of assets. Equitable division of property is not the same as equal division of property. Pittman v. Pittman, 791 So.2d 857 (¶ 12) (Miss.Ct.App.2001). Using the guidelines set forth in Ferguson, the chancellor must find what the fair and reasonable allocation of property would be for each party. Ferguson v. Ferguson, 639 So.2d 921, 928 (Miss.1994). The Ferguson guidelines require the consideration of the contributions that each party gave to creation of the marital asset, both monetary and otherwise; *1179 the market value of the asset; the value of assets not normally subject to distribution, absent equitable factors to the contrary; the economic impact that would result from the division of property; the extent to which division would avoid future problems; and the financial security of each party and other equitable factors. Id.
¶ 16. Mr. Uglem had provided the majority but not all of the capital for the house. Both Mr. and Mrs. Uglem had contributed to it in non-monetary ways. Due to the animosity between the parties, the chancellor found it appropriate to allow one party to remain in the house while granting the other party an equitable monetary share. Additionally, the chancellor noted that this division would have no unfair impact upon Mrs. Uglem since her income from her disability checks would exceed Mr. Uglem's income from his retirement fund.
¶ 17. The Ferguson factors were considered and fairly applied.

VI.

Mrs. Uglem's Financial Contributions
¶ 18. Finally, Mrs. Uglem asserts that the chancellor erred by failing to consider all of her financial and non-financial contributions. While she does not direct us to specific non-financial contributions that were overlooked, she does focus on charges on her credit card. Additionally, she claims that she invested some of her funds from an IRA account into the house, but was never credited for these funds during the division of assets.
¶ 19. The chancellor sits as the finder of fact, and his determinations will not be disturbed absent evidence of abuse of discretion or misstatement of law. McEwen v. McEwen, 631 So.2d 821, 823 (Miss.1994). Allegations not supported by the record cannot be the basis for appellate relief. Robinson v. State, 662 So.2d 1100, 1104 (Miss.1995). This court must decide a case by the facts in the record, not by mere assertions in the brief.
¶ 20. We find that the record supports the chancellor's findings about the payments that each spouse made during the construction of their home. Some of the expenses alleged were contested and some were not. The chancellor discussed in detail the funds that he determined each party clearly contributed. We find no reversible error.
¶ 21. THE JUDGMENT OF THE CHANCERY COURT OF WAYNE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR.