910 So.2d 35 (2005)
Judy Lynn (Payne) GOODSON, Appellant,
v.
William David GOODSON, Appellee.
Nos. 2003-CA-01598-COA, 2001-CA-00494-COA.
Court of Appeals of Mississippi.
January 11, 2005.
John Thomas Lamar, Senatobia, attorney for appellant.
Steven Glen Roberts, attorney for appellee.
*36 Before KING, C.J., CHANDLER and ISHEE, JJ.
CHANDLER, J., for the Court.
¶ 1. This case is an appeal of an issue that was decided by the Mississippi Court of Appeals in an opinion dated April 16, 2002. At issue on remand was whether Judy Lynn Goodson was entitled to any portion of the 401K account of her former husband, William David Goodson. The Chancery Court of DeSoto County, Mississippi, decided to divide the marital assets equally, valued the marital property, and held that Judy Goodson was not entitled to any portion of William Goodson's 401K. This holding was based on the chancellor's finding that the value of Judy's business and the value of Judy's car were worth at least the value of William's 401K. Judy appeals, raising the following issue:
WHETHER THE CHANCELLOR ERRED IN DENYING JUDY GOODSON ANY INTEREST IN WILLIAM GOODSON'S 401K ACCOUNT
¶ 2. Finding that the chancery court failed to consider whether the value of Judy's business was attributable to goodwill, and finding that the chancellor erred in not assigning a specific value on Judy's business, we reverse and remand for such determinations. The chancellor did not err in his valuation of Judy's automobile, and we affirm as to this ruling.

FACTS
¶ 3. William David Goodson and Judy Lynn Goodson married on March 24, 1981. During the marriage, William Goodson was employed at United Technology Carrier and accumulated a 401K stock account. The parties were divorced on January 10, 2001.
¶ 4. In 1998, Judy Goodson began operating a business known as "Judy's Painting Services." The chancellor determined that this business was a marital asset. The evidence showed that the yearly gross income was in excess of $100,000 per year.
¶ 5. The exact net income generated by Judy's business was difficult to ascertain. After Judy is paid for a job, she deposits only part of the money into her bank account. Her bank statements show deposits but no expenditures. At a deposition, Judy denied that she had mailed out invoices, denied that she had copies of bills, denied that she had records of accounts receivable, and denied that she had copies of invoices. Judy admitted to having performed the work for non-contractors from whom she received payment. These payments were unreported for income tax purposes. She invoked the Fifth Amendment and refused to answer further inquiries into this line of questioning, despite the chancellor's warning that doing so would carry obvious civil implications.
¶ 6. In 1999, Judy purchased a 1999 Mercury Grand Marquis. She financed this car with a $20,000 interest-free loan made by a personal friend. Judy makes monthly payments of $400 per month for this car. The title to this car shows no lienholder, and there is no document showing that she owed or borrowed $20,000 from her friend. In Judy's first financial affidavit, she valued the 1999 Mercury Marquis at $22,000 and stated that she had no liens on the car. In her amended financial affidavit, filed on the day of the trial, Judy valued the car at $18,000, with a loan balance of $19,000.
¶ 7. After the parties' divorce, Judy appealed to this Court. We also remanded in order to allow the parties to present new evidence to aid the chancellor in valuing the marital property. Whether Judy would be entitled to any of William's 401K would be based on the value of all marital property.
*37 ¶ 8. No new evidence was presented to the chancellor on remand. The trial court found that the marital assets should be divided, on an equal basis, based on the value of the property on January 10, 2001. All of the property owned by either of the parties at the time of divorce was determined to be marital property. The parties listed thirty-eight items of martial property which had not been valued at trial. The only items of marital property that are currently in dispute are Judy's Painting Services and Judy's 1999 Mercury Grand Marquis. These two items of property are the only items that could offset Judy's interest in William's 401K.
¶ 9. The chancellor determined that the value of William's 401K was $123,500, the value of Judy's 1999 Grand Marquis was subject to no liens and the value was $20,000, and the value of Judy's Painting Services was worth at least $100,000. The court placed no specific dollar figure on Judy's business because Judy "failed to keep and/or produce adequate records concerning the business." Based on this valuation, the court held that Judy was not entitled to any portion of William's 401K because the value of Judy's business and Judy's car were worth at least as much as the 401K.

ANALYSIS
WHETHER THE CHANCELLOR ERRED IN DENYING JUDY GOODSON ANY INTEREST IN WILLIAM GOODSON'S 401K ACCOUNT

(A) Whether the Chancellor Properly Valued Judy's Business
¶ 10. The assets of Judy's Painting Service are valued at approximately $1,000. Because the business is service-oriented, Judy argues that the fair market value of her business is closer to the $1,000 in assets than the $100,000 she receives in income. She also argues that the court should decline to consider the goodwill Judy has generated in establishing a profitable business, because goodwill is not a factor in determining the worth of a business for purposes of dividing martial property. She cites Singley v. Singley, 846 So.2d 1004, 1011(¶ 18) (Miss.2002), to support her argument.
¶ 11. The Mississippi Supreme Court has ruled that goodwill cannot be used as a factor in valuing a business for the purpose of dividing marital property. The Court decided that the jurisdictions that have excluded goodwill in determining the fair market value of a business have adopted the better rule. Id. at 1010(¶ 17) (citing In re Marriage of Claydon, 306 Ill.App.3d 895, 240 Ill.Dec. 144, 715 N.E.2d 1201 (1999); Yoon v. Yoon, 711 N.E.2d 1265 (Ind.1999); In re Marriage of Zells, 143 Ill.2d 251, 157 Ill.Dec. 480, 572 N.E.2d 944 (1991); Powell v. Powell, 231 Kan. 456, 648 P.2d 218 (1982); Nail v. Nail, 486 S.W.2d 761 (Tex.1972); Holbrook v. Holbrook, 103 Wis.2d 327, 309 N.W.2d 343 (1981); Christians v. Christians, 732 So.2d 47 (Fla.Dist.Ct.App.1999)). In all these cases, the value of the divorcing spouse's businesses were derived from the personal attributes and abilities of the individual and dependent upon the continued presence of that individual. At this stage, it is unclear to us whether the high value of Judy's Painting Services "exists separate and apart from the reputation and continued presence of the marital litigant or the tangible asset." See Id. at 48.
¶ 12. The chancellor recognized that the value of the business was worth substantially more than $1,000 in assets because it generated substantial revenues, plus enough cash on the side to cause Judy to plead the Fifth Amendment regarding the amount of cash she had received in the business. The fact that the business generates *38 substantial profits and enjoys an established client base indicates that a hypothetical purchaser will pay significantly more for Judy's business than the mere value of her assets. However, it is also reasonable to hold that the value of Judy's business is derived primarily through the work ethic and reputation of Judy, in which case the market value of the business would be relatively low and much closer to the value of the assets than the income. The term "goodwill" is a nebulous term. "Goodwill within a business depends on the continued presence of the particular professional individual as a personal asset and any value that may attach to that business as a result of that person's presence." Singley, 846 So.2d at 1011(¶ 18). We remand this issue to the chancery court to re-value Judy's Painting Services and decide how much value, if any, of Judy's business is due to goodwill.
¶ 13. The Mississippi Supreme Court noted that the true value of a business is "that price at which property would change hands between a willing buyer and a willing seller when the former is not under any compulsion to buy and the latter is not under any compulsion to sell, both parties having reasonable knowledge of the relevant facts." Id. The value of a business includes more than physical assets and goodwill, as Judy argues. Contrary to Judy's position, there are many factors, other than physical assets and goodwill, that can be used in arriving at the value of a business. Some of these factors include, but are not limited to, income generated, accounts receivable, pending contracts, and customer lists. On remand, the chancery court is free to consider factors other than goodwill and physical assets in valuing Judy's Painting Services.
¶ 14. The chancery court held that the value of Judy's business was at least $100,000, but it did not assign a specific value to Judy's business because of Judy's failure to produce adequate records. The chancellor erred in not placing a specific value on Judy's business. The Mississippi Supreme Court has held that "[p]roperty division should be based upon a determination of fair market value of the assets, and these valuations should be the initial step before determining division." Ferguson v. Ferguson, 639 So.2d 921, 929 (Miss.1994). The chancellor indicated that there is a possibility that Judy's business is worth more than $100,000. If Judy's business is worth more than $100,000, Judy would be required to pay money to William. We remand this case to allow the chancellor to place a specific value on Judy's Painting Services.

(B) Whether the Chancellor Properly Valued Judy's Car
¶ 15. In Judy's first affidavit, she valued her 1999 Grand Marquis at $22,000 and stated that she had no liens on the car. Immediately before the trial, she amended her affidavit and valued the car at $18,000, with a $19,000 loan balance. During the trial, it was revealed that Judy's friend loaned her the money to purchase the car. Judy's agreement to pay back her friend is not legally binding, because the parties have not signed any loan document. The only document commemorating this transaction was a statement signed by Judy's friend that Judy borrowed $20,000 from him to buy a car. This document was not generated until after their depositions. Judy submits that her car has no value because she took out the $20,000 loan, but there is no legally binding lien on Judy's car. Judy never signed a document agreeing to pay back her friend. On this evidence, there is no abuse of discretion in holding that Judy's car is free of liens.
*39 ¶ 16. Judy also argues that the value of her car should not be subject to equitable division because she purchased it while the parties were separated. The Mississippi Supreme Court has defined marital property as follows:
We define marital property for the purpose of divorce as being any and all property acquired or accumulated during the marriage. Assets so acquired or accumulated during the course of the marriage are marital assets and are subject to an equitable distribution by the chancellor. We assume for divorce purposes that the contributions and efforts of the marital partners, whether economic, domestic or otherwise are of equal value.
Hemsley v. Hemsley, 639 So.2d 909, 915 (Miss.1994). We find no abuse of discretion in the chancellor's holding that Judy's car is marital property and subject to equitable distribution. The Hemsley court holds that all property acquired during the marriage is marital property, and it makes no exceptions for property acquired during the parties' separation. The chancellor's holding that Judy's car is valued at $20,000 is affirmed.
¶ 17. THE JUDGMENT OF THE CHANCERY COURT OF DESOTO COUNTY IS AFFIRMED IN PART, REVERSED AND REMANDED IN PART FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS ARE ASSESSED IN EQUAL PARTS TO THE APPELLANT AND THE APPELLEE.
KING, C.J., BRIDGES AND LEE, P.JJ., MYERS, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY.