911 So.2d 591 (2005)
Carrie DUNN, Appellant/Cross-Appellee
v.
David DUNN, Appellee/Cross-Appellant.
No. 2004-CA-00937-COA.
Court of Appeals of Mississippi.
September 13, 2005.
*593 Jay L. Jernigan, Hattiesburg, attorney for appellant.
Jack Parsons, attorney for appellee.
Before LEE, P.J., MYERS and BARNES, JJ.
BARNES, J., for the Court.
¶ 1. Carrie Dunn appeals the decision of the Perry County Chancery Court regarding valuation and distribution of certain marital assets, the amount awarded her in child support and the court's denial of her motion to reopen the case with respect to tax ramifications of which she became aware subsequent to trial. David Dunn cross-appeals challenging the court's valuation and distribution of the marital assets and the chancellor's failure to award him child support. Finding error only in the chancellor's refusal to reopen, we affirm in part and reverse and remand in part.

STATEMENT OF FACTS AND DISPOSITION
¶ 2. Carrie and David Dunn were granted a divorce on April 20, 2004 in the Perry County Chancery Court, ending their marriage of over fourteen years. The Dunns had been married since 1989 and during that time had seen the births of two *594 daughters, Lauren and Karen. David worked as a surveyor throughout the marriage, and at the time of the divorce, each of the Dunns owned fifty percent of the stock of Dunn Surveying, Inc., a subchapter S corporation. Carrie worked full time as a nurse.
¶ 3. Before trial, the court granted the Dunns's joint motion to dismiss fault grounds, allowing them to pursue an irreconcilable differences divorce. Also prior to trial, the Dunns agreed upon custody and visitation arrangements, under which Carrie received primary physical care and custody of four-year-old Lauren and David received primary physical care and custody of fourteen-year-old Karen. As a result of these pre-trial agreements, the only issues before the chancery court were child support and property distribution.
¶ 4. The chancellor initially issued a bench ruling in the case, but the order was withdrawn the following day. In its place, a final judgment was issued on April 29, 2004, dissolving the marriage and awarding, among other things: (1) all shares of Dunn Surveying, Inc. to David; (2) the building in which Dunn Surveying was located, to David; (3) the marital home to Carrie, subject to all existing indebtedness, and with the condition that David pay one-half of the monthly mortgage payments for the next eighteen months; (4) the couple's one-half share of a 103-acre Lewisburg, Kentucky, property which the Dunns owned jointly with another couple, to David; and (5) $400 per month in child support to Carrie.
¶ 5. After trial but prior to the issuance of the final judgment, both parties moved to reopen the case. David sought to provide the court with more detailed evidence on the value of the Kentucky property and on the value of Dunn Surveying, but his motion was denied.[1] Carrie's motion to reopen alleged that immediately after the trial, David sent her a certified letter showing that she had received income from Dunn Surveying totaling $14,305; she contended that David attributed this income to her in order to mask his own true income and to force her to pay taxes on income that she never received. Thus, Carrie asked the chancellor to reopen the case in order to evaluate Dunn Surveying in light of this alleged accounting misconduct. The chancellor denied her motion, stating that it would require the court to delve into events which transpired after the full trial had ended, and that if the corporation owed money to Carrie, the issue could be litigated in a court of law as a pure debt matter.
¶ 6. Aggrieved, Carrie timely filed a notice of appeal to this Court. She contends that the chancellor erred in failing to evaluate and divide the marital property properly; specifically, Carrie alleges that the lower court erred by ignoring appraisal reports of the Kentucky property and substantially undervaluing Dunn Surveying, Inc. Carrie further challenges the adequacy of the award of child support and the chancellor's denial of her motion to reopen.
¶ 7. On cross-appeal, David also alleges that the chancellor erred in failing to evaluate and divide the marital property properly, specifically by overvaluing Dunn Surveying. Additionally, he claims the lower court erred in failing to order Carrie to pay child support for the care of Karen, the child in his custody. Lastly, David states that the chancellor erred in ordering him to pay one-half of the mortgage note *595 due on the marital home for the next eighteen months.

STANDARD OF REVIEW
¶ 8. The scope of review in domestic relations matters is strictly limited. Brawdy v. Howell, 841 So.2d 1175, 1178(¶ 8) (Miss.Ct.App.2003). "This Court will not disturb the chancellor's findings unless the court's actions were manifestly wrong, the court abused its discretion, or the court applied an erroneous legal standard." Andrews v. Williams, 723 So.2d 1175, 1177(¶ 7) (Miss.Ct.App.1998) (citing Sandlin v. Sandlin, 699 So.2d 1198, 1203 (Miss.1997)). Particularly in the areas of divorce, alimony and child support, this Court is required to uphold the findings of fact made by a chancellor that are supported by substantial evidence and that do not indicate arbitrariness or caprice. Henley v. Jones, 880 So.2d 382, 384(¶ 5) (Miss.Ct.App.2004) (citing Newsom v. Newsom, 557 So.2d 511, 514 (Miss.1990)); Uglem v. Uglem, 831 So.2d 1175, 1177(¶ 7) (Miss.Ct.App.2002).

ISSUES AND ANALYSIS

I. WHETHER THE CHANCELLOR ERRED IN EVALUATING AND DIVIDING THE MARITAL PROPERTY, PARTICULARLY DUNN SURVEYING, INC. AND THE KENTUCKY PROPERTY.
¶ 9. In his final order, the chancellor valued and distributed the relevant marital property as follows:
(1) All shares of Dunn Surveying, Inc., to David, with the chancellor assigning the business a value of $60,000;
(2) The building in which Dunn Surveying was located, valued at zero due to indebtedness exceeding the market value of the property, to David;
(3) The marital home, valued at $60,000, to Carrie;[2]
(4) The one-half share of the 103-acre Kentucky property, valued at $11,000, to David;[3]
(5) Three vehicles, valued at the automobiles' combined equity of $26,700, to David; and
(6) A 2000 Nissan Maxima, valued at its equity of $17,500, to Carrie.
¶ 10. According to these figures, the total marital assets were valued at $175,200. In the resulting distribution, David received $97,700 in assets, or 55.8%, and Carrie received $77,500 in assets, or 44.2%. However, the chancellor also required that David pay half of the monthly mortgage note of approximately $1,900 for the next eighteen months; these additional payments will increase the value of the total marital assets to $192,300, distributing $97,700 (50.8%) to David and $94,600 (49.2%) to Carrie.
¶ 11. It is well settled that this Court will look to the chancellor's application *596 of the Ferguson factors when reviewing questions of equitable distribution of marital property.[4]Ferguson v. Ferguson, 639 So.2d 921, 928 (Miss.1994); Wells v. Wells, 800 So.2d 1239, 1242(¶ 4) (Miss.Ct.App.2001). While both parties assert generally that the chancery court did not take proper consideration of the Ferguson factors, their primary dispute lies in the chancellor's treatment of one factor: the market value of the assets at issue. Carrie contends that the chancellor erred in the evaluation and distribution of the marital assets by failing to give due regard to an appraisal report of the Kentucky property and by inadequately examining the financial records of Dunn Surveying, Inc. She alleges that these errors resulted in the chancellor valuing these assets below their fair market value. David counters, arguing that the chancellor erred by overvaluing Dunn Surveying.
¶ 12. At the outset, we note that in reviewing a chancellor's judgment as to the distribution of marital property, it is not within this Court's province to conduct a Ferguson analysis anew: Rather, the Court will review the chancellor's judgment to ensure that he followed the appropriate standards and did not abuse his discretion. Phillips v. Phillips, 904 So.2d 999, 1001(¶ 8) (Miss.2004). In so reviewing, the Court must keep in mind that equitable distribution does not always mean an equal division of property. Chamblee v. Chamblee, 637 So.2d 850, 863-64 (Miss.1994). While this Court has reversed decisions where the chancellor failed to apply every one of the Ferguson factors, not every case requires consideration of all of the factors. Weathersby v. Weathersby, 693 So.2d 1348, 1354 (Miss.1997). This Court has stated that the chancellor may consider only those factors he finds applicable to the property in question. Glass v. Glass, 857 So.2d 786, 790(¶ 10) (Miss.Ct.App.2003).
¶ 13. The chancellor's final order made it abundantly clear that he fully considered the Ferguson factors in distributing the marital property. Following the guidelines, the chancellor addressed each party's income and contribution to the accumulation of the marital property. In particular, the court noted that David's contribution exceeded Carrie's by a substantial margin due to his higher income. The court also recognized the amount of time devoted by Carrie to the rearing of the Dunns's two young children, and Carrie's attending college to obtain her nursing degree. The chancellor additionally found that both parties had been good stewards of the marital property, and that neither had engaged in wasteful behavior. Lastly, in his original bench opinion, the chancellor also noted the need "to cut everything *597 clean," or to distribute the assets so as to eliminate friction between the parties in the future.
¶ 14. It is thus apparent from the record that the chancellor gave consideration to the pertinent Ferguson factors in his valuation and distribution of the Dunns's marital assets. We find it necessary only to discuss in detail the lower court's treatment of one Ferguson factor  the market value of the assets  and analyze whether the chancellor's valuation of the following assets was arbitrary or capricious. See Uglem, 831 So.2d at 1177.

A. Dunn Surveying, Inc.
¶ 15. Carrie attacks the lower court's valuation of Dunn Surveying, Inc., claiming that the chancellor grossly underestimated the fair market value of the corporate assets and of the business's net income.
¶ 16. The Mississippi Supreme Court has noted that the true value of a business is "that price at which property would change hands between a willing buyer and a willing seller when the former is not under any compulsion to buy and the latter is not under any compulsion to sell, both parties having reasonable knowledge of the relevant facts." Singley v. Singley, 846 So.2d 1004, 1011(¶ 18) (Miss.2002). In some instances where the value of a service business is derived primarily through the owner's reputation and work ethic, the market value of the business could be relatively low and closer to the value of the assets than the income. See Goodson v. Goodson, 910 So.2d 35 (¶ 12) (Miss.Ct.App.2005). However, it may be reasonable for a court to find that a business is worth more than the total of its assets. For example, a court could increase its valuation of a business upon a finding of continued substantial profits or an established client base. See id. Such an "income-based" approach values a business not only on its assets, but also on its estimated future earnings. Using this approach, an expert reviews historic earnings, arrives at a "normalized" earnings figure and multiplies the earnings figure by capitalization factors that reflect the risk of investing in the business. See BRETT R. TURNER, EQUITABLE DISTRIBUTION OF PROPERTY § 7.08 (2d ed. 1994).
¶ 17. Where parties provide inadequate proof of an asset's value, a chancellor's valuation with "some evidentiary support" will be upheld. Dunaway v. Dunaway, 749 So.2d 1112, 1121(¶ 28) (Miss.Ct.App.1999). Further, "[I]t is incumbent upon the parties, and not the chancellor, to prepare evidence touching on matters pertinent to the issues to be tried." Id. at 1118(¶ 14). In this case, neither party submitted an appraisal of the business or offered any testimony, expert or otherwise, that assisted the court in its valuation in any material way. Instead, the chancellor was left to base his opinion upon Carrie's Exhibit No. 5, which consisted of financial records submitted by Dunn Surveying's accountant. The fault for the dearth of evidence in this matter rests solely upon the shoulders of the parties.[5]
¶ 18. The question before this Court is whether the chancellor's valuation was based on substantial evidence; accordingly, we must consider the bases for his decision. In valuing Dunn Surveying at $60,000, the chancellor looked to both the "book value" of the corporation's capital stock ($45,000) and to other documents showing the corporation's total assets to be *598 approximately $84,600. Included in the corporation's assets were three automobiles titled in David's name, with a combined equity of $26,700. In addition, the chancellor took into account the fact that Dunn Surveying is a service business, "almost wholly dependent upon David's personal efforts to be productive and profitable at all." While the chancellor did not expressly state his computations, it appears that he took the corporation's net asset value of approximately $84,600 and subtracted $26,700 for the three vehicles that he had awarded to David personally but that were used in the business.
¶ 19. Carrie challenges the valuation, claiming that the corporation had total taxable assets of approximately $182,000; this number, however, is based upon what the assets originally cost and does not reflect any depreciation. Furthermore, Carrie's citation of the corporation's net income relies on the 2001 tax year wherein approximately $48,000 was reported as income, but Dunn Surveying reported only $27,000 in income during the 2002 tax year. Implicit in Carrie's argument is that the chancellor erred in employing an "asset-based" approach in valuing Dunn Surveying, as opposed to using an "income-based" evaluation. Carrie failed to cite any authority for her position that the chancellor's asset-based valuation of the business was somehow less reliable than a valuation based upon the business's income. She offered no testimony that Dunn Surveying reasonably expected increased profits; in fact, the evidence she submitted showed a substantial decrease in the business's income from tax year 2001 to tax year 2002. Moreover, Carrie offered no evidence that the corporation had an established client base or that it benefitted from repeat business by former clientele. Lastly, she provided no evidence of normalized earnings and suggested no capitalization factor that would have assisted the chancellor in arriving at a valuation of the business using an income-based approach.
¶ 20. David also alleges that the chancellor erred in evaluating Dunn Surveying, but claims that the court overvalued the business. He claims that the chancellor should have valued the corporation at zero, as "[t]he very nature of this business ... makes it non-susceptible to having a value placed on it." He does not, however, point to any specific information overlooked by the chancellor, nor does he suggest a more reasonable non-zero valuation. David asks us to find reversible error in the chancellor's valuation; however, he offered no significant valuation evidence at trial. He chose not to offer probative evidence on the value of the business and may not now object.
¶ 21. As this Court ruled in Dunaway, when the parties have wholly failed to present the court with evidence as to the value of an asset, we will not reverse the chancellor who made the best valuation he could with what he was given. See Dunaway, 749 So.2d at 1121(¶ 28). It is significant that in this case neither party offered expert testimony regarding the value of Dunn Surveying or requested that the chancellor appoint an expert to assist in the valuation of the business. Additionally, a review of the record reveals that the only testimony either party gave as to the value of the business was David's opinion that the business's equipment was valued at around $5,000. We conclude that the chancellor based his valuation of Dunn Surveying upon the best evidence he had before him and that he did not abuse his discretion in employing an asset-based approach in his valuation of the business. Both the appeal and cross-appeal on this issue are without merit.

*599 B. The Kentucky property
¶ 22. David and Carrie together owned a half share of the 103-acre Kentucky property, with the other half share in the property owned by another couple. The two couples purchased the property in 2002 for a sum of $53,000. Upon stipulation by David as to its admissibility, Carrie introduced an appraisal report valuing the property at $136,000. Counsel for David, however, explicitly stated that he only made the stipulation in regard to the admissibility of the document, not as to its correctness. In reaching the $136,000 figure, the appraisal report took into consideration sales of comparable properties in the area. However, the appraisal report noted that "Sales of comparable residences in the area of [the property] were very limited," and that "Sales for homes in the Lewisburg community are extremely limited in all value ranges at this time."
¶ 23. Addressing his belief as to the present value of the land, David testified that he had expended $15,000 to begin building a cabin upon the land and that it had not yet been completed. He testified that he would need to spend an additional $15,000 in order to complete work on the cabin. He also testified that the only access to the land was over a "washed-out logging road," travel upon which was possible only via an all-terrain vehicle or tractor. David testified that in order to access the property via automobile, a road to the property would have to be built. He estimated the cost of paving such a road at $10,000. Lastly, he stated that land in the Lewisburg area was selling for approximately $550 per acre.
¶ 24. In his final judgment, the chancellor noted the $53,000 purchase price and the subsequent expenditures toward the building of the cabin, but expressed grave doubts about the reliability of the appraisal report. He stated: "[T]he Court, noting the purchase less than two years ago at the stated price [$53,000], and noting the subject property is remote as admitted, together with considering the comparables shown on the appraisal, finds that the submitted appraisal is not realistic nor entitled to the Court's reliance." Carrie contends that the chancellor erred in his valuation by ignoring the appraisal report; she claims that the appraisal report was uncontradicted evidence entitled to the chancellor's deference.
¶ 25. It is true that "[E]vidence which is not contradicted by positive testimony or circumstances, and is not inherently improbable, incredible, or unreasonable, cannot be arbitrarily or capriciously, discredited, disregarded, or rejected, even though the witness is a party or interested; and unless shown to be untrustworthy, is to be taken as conclusive, and binding on the triers of fact." A & F Properties, LLC v. Lake Caroline, Inc., 775 So.2d 1276, 1282(¶ 17) (Miss.Ct.App.2000) (citing Lucedale Veneer Co. v. Rogers, 211 Miss. 613, 634, 53 So.2d 69, 75 (1951)). However, Carrie's characterization of the appraisal report as uncontradicted is inaccurate. David testified (1) that the cabin was not yet fully built; (2) that the property was at present virtually inaccessible; and (3) that land in the area was selling for $550 per acre. Taken together, this evidence strongly contradicts the appraisal report, which on its face does not account for any of these deficiencies. We find that it was within the chancellor's discretion to disregard the appraisal report as untrustworthy under these circumstances.
¶ 26. The record indicates that the chancellor explored the proof available to him and arrived at a reasonable valuation of the property. This Court cannot say that the chancellor abused his discretion in doing so. Therefore, this issue is without merit.

*600 II. WHETHER THE CHANCELLOR ERRED IN AWARDING $400 PER MONTH IN CHILD SUPPORT TO CARRIE DUNN, AND IN REFUSING TO AWARD CHILD SUPPORT TO DAVID DUNN.
¶ 27. Section 43-19-101 of the Mississippi Code sets forth guidelines which provide a rebuttable presumption regarding the award or modification of child support. Miss.Code Ann. § 43-19-101(1) (Rev.2004). For support of one child, the guidelines provide a presumption of fourteen percent of the parent's adjusted gross income. Id. However, these guidelines are not absolute rules. Wright v. Stanley, 700 So.2d 274, 282 (Miss.1997); Magruder v. Magruder, 881 So.2d 365, 367(¶ 7) (Miss.Ct.App.2004). The guidelines also provide that where a parent's adjusted gross income is greater than $50,000, the trial court "shall make a written finding in the record as to whether or not the application of the guidelines established in this section is reasonable." Miss.Code Ann. § 43-19-101(4) (Rev.2004). Thus, if the chancellor finds that application of the guidelines is not appropriate, he may deviate from them. Id. Lastly, "[W]here proof shows that both parents have separate incomes or estates, the court may require that each parent contribute to the support and maintenance of the children of the marriage in proportion to the relative financial ability of each." Miss.Code Ann. § 93-5-23 (Rev.2000) (emphasis added).
¶ 28. Carrie alleges that the chancellor erred in awarding her an inadequate amount of child support for the benefit of Lauren, the child in her custody. She claims that in light of David's higher yearly income, his $400 per month obligation is too low. In the case at hand, David's 2003 adjusted gross income (as adduced from federal and state tax returns) was $68,538; Carrie's adjusted gross income for the same period was $42,694. As stated above, in a case where a parent's adjusted gross income is greater than $50,000, the chancellor is required to make a finding on the record as to whether the application of the child support guidelines is reasonable. Miss.Code Ann. § 43-19-101(4). At trial, the chancellor expressly referenced the guidelines; however, he stated that he was departing from them in order to allocate financial responsibility between the two parents, each of whom had primary care and custody of one minor child. In deviating from the guidelines, the chancellor relied upon § 93-5-23 of the Mississippi Code, which as mentioned above, allowed him to take into consideration the relative financial abilities of both Carrie and David.[6] Looking to the trial court's on-the-record considerations, this Court cannot say that the chancellor abused his discretion in deviating from the guidelines.[7] Carrie's assignment of error is without merit.
*601 ¶ 29. David contends that the chancery court erred in refusing to award him child support for the benefit of Karen, the child in his custody. He seeks a reduction, or in the alternative, an elimination, of his monthly child support payments in consideration of the fact that he is also expending money for Karen's benefit. Section 43-19-101(3)(d) of the Mississippi Code empowers the chancellor to take into consideration the fact that a parent retains custody of a child, allowing him to make adjustments to child support payments reflecting such circumstances. Miss.Code Ann. § 43-19-101(3)(d) (Rev.2004). However, whether an adjustment is to be made, and if so, how much, is left to the chancellor's discretion. Magruder v. Magruder, 881 So.2d 365, 368(¶ 12) (Miss.Ct.App.2004) (citing Bailey v. Bailey, 724 So.2d 335, 338(¶ 11) (Miss.1998)). Absent manifest error on the part of the chancellor, this Court will not disturb an award or adjustment of child support payments. Perkins v. Perkins, 787 So.2d 1256, 1260(¶ 9) (Miss.2001). In finding that $400 per month to Carrie was a proper award, the chancellor took into consideration the differences in income between the parties and the fact that each had custody of a child. The chancellor did not abuse his discretion by refusing to award child support to David. His argument is without merit.

III. WHETHER THE CHANCELLOR ERRED IN DENYING CARRIE DUNN'S MOTION TO REOPEN
¶ 30. In her motion to reopen, Carrie asked the chancellor to consider a matter that was never actually discussed at trial-the taxes due on income earned by Dunn Surveying, Inc. during the previous year. The trial of this case was held on April 7, 2004. We certainly take judicial notice that this was just prior to the federal and state tax filing deadline of April 15. There was evidence presented about the value of Dunn Surveying and the amount of income earned by the business during calendar year 2002. However, we find no evidence presented about income earned during calendar year 2003.
¶ 31. Our concern stems from the unique problems that are caused by both spouses owning an interest in a subchapter S corporation. This type of corporation does not pay tax at the corporate level. Instead, the amount of income is passed through to the shareholders, and the shareholders must pay all federal and state income taxes that are owed. Prior to the dissolution of their marriage, it would not matter whether Carrie or David paid the income taxes due on the corporation's earnings because the funds necessary to pay the taxes would come from the marital estate. Upon the dissolution of their marriage, however, there is ample room for one party to "stick" the other spouse with the tax liability without the corporation distributing the funds necessary to pay the taxes. This appears to be what occurred here.
¶ 32. In the chancellor's final judgment, he made several factual findings about Dunn Surveying that are relevant to this discussion:
David's income from the corporation is revealed to approach $6,900.00 to $7,000.00 monthly, with a net of not less than $5,000.00 per month. Tax records indicate further that expenses such as operation and maintenance of vehicles available to and used by David are borne by the corporation, and there appears to be a possible "per diem" allowance which may also augment his income to some extent as well as possibly other "perks." ...
Carrie has worked in school work, and upon completion of her higher education became a registered nurse and has pursued *602 that employment for the past several years. While she is the record owner of 50% of the corporate stock of Dunn Surveying, Inc., it does not appear that she directly and in actuality participates in its realized net income, but that is not to say that she does not so benefit through the payments of the corporation to David. . . .
Dunn Surveying, Inc. [is] a Mississippi corporation, the capital stock of which is owned by David and Carrie 50% to each. . . . Records in evidence indicate that the business produces an average annual income to David approximating $70,000.00.
¶ 33. The chancellor denied Carrie's motion to reopen, reasoning that "if the corporation owes Carrie money that can be litigated in a court of law as a pure debt matter." This finding is contrary to the often-quoted chancery court maxim, "Equity delights to do complete justice and not by halves." See V.A. GRIFFITH, MISSISSIPPI CHANCERY PRACTICE § 28 (2d ed. 1950). Additionally, Ferguson requires a chancellor to consider tax consequences resulting from the division of the marital property. See Ferguson, 639 So.2d at 928. The chancellor properly awarded David the fifty percent interest in the corporation that had been previously vested in Carrie's name. The chancellor acknowledged that David received the benefit of the income from the corporation and conveyed full ownership of the corporation to him through the divorce decree. What the chancellor did not know, and what the parties did not address, was who would be responsible for the payment of state and federal income taxes on the monies generated during calendar year 2003. Furthermore, since the judgment was rendered in April of 2004, it may be necessary that Carrie also receive a pass-through of the corporation's income for the portion of calendar year 2004 during which time she was a part owner of the corporation.
¶ 34. In Wakefield v. Puckett, the Mississippi Supreme Court set forth a four-pronged approach to determine whether a chancellor should reopen a case in light of new evidence. Wakefield v. Puckett, 584 So.2d 1266, 1268-69 (Miss.1991). Under Wakefield, the court must consider: (1) whether the cause of the omission is excusable; (2) whether the evidence is relevant to a material issue; (3) whether the absence of the evidence will result in a miscarriage of justice; and (4) whether another party will be significantly or unduly prejudiced if the case were reopened. Id. at 1268-69. While phrased differently, Wakefield sets forth an abuse of discretion standard. Id.
¶ 35. As to the first prong, Carrie argues that her failure to offer evidence of the alleged accounting impropriety was not due to her negligence or mistake; she states that she was unable to offer the evidence at the trial because she received it only after the trial had ended. We recognize that one may argue that Carrie's attorney should have addressed the tax issues. However, David did not notify Carrie of her liability to pay taxes on $14,305 in income until after the conclusion of the divorce hearing. Since Dunn Surveying was a closely held business that was run entirely by David, Carrie's failure to address the 2003 and 2004 tax liability that was created due to the income earned by Dunn Surveying was excusable. As to the second factor, the income earned by Dunn Surveying during 2003 was certainly relevant to a material issue, namely the division of the marital property. Further, regarding the third Wakefield factor, denying Carrie's motion to reopen did in fact result in a miscarriage of justice. Although the chancellor noted that Carrie can still sue Dunn Surveying in a court of *603 law for any amount owed her, certainly complete justice in this marital dissolution requires that the income generated by the business be used to pay the corresponding income tax liability. Lastly, it is unlikely that David would be prejudiced if the case were reopened.
¶ 36. Taking the Wakefield factors into consideration, this Court finds that the chancellor abused his discretion in denying Carrie's motion to reopen. Accordingly, we reverse the chancellor's decision to deny Carrie's motion to reopen and remand for the chancellor to allow Carrie an opportunity to present evidence relating to any federal or state income taxes, including interest and penalties, that have or may be assessed to her as a result of any income assessed to her as a result of her ownership interest in Dunn Surveying, Inc. Based on such evidence, the chancellor may enter such findings of fact and conclusions of law as he deems appropriate.
¶ 37. THE JUDGMENT OF THE CHANCERY COURT OF PERRY COUNTY IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART ON DIRECT APPEAL AND AFFIRMED ON CROSS-APPEAL. ALL COSTS OF THIS APPEAL ARE TO BE EQUALLY DIVIDED BETWEEN THE APPELLANT AND THE APPELLEE.
KING, C.J., BRIDGES AND LEE, P.JJ., IRVING, MYERS, CHANDLER, GRIFFIS AND ISHEE, JJ., CONCUR.
NOTES
[1] On cross-appeal, David does not challenge the chancellor's denial of his motion to reopen.
[2] The lower court reached the $60,000 figure by subtracting from the home's appraised value of $210,000 a mortgage debt of approximately $155,000, and by adding $5,000 to the resulting figure. The court said the extra $5,000 was added in light of Carrie's testimony that the value of the home was greater than its appraised value. While Carrie's statement of issues generally alleges that the lower court improperly valued the marital home, she does not address the issue further.
[3] To arrive at this figure, the court took the original purchase price of $53,000, added $15,000 for improvements made to the land, and added another $2,000, presumably to account for the land's appreciation in value. Next, from this $70,000 figure, the court subtracted debt on the property of $48,000. The court halved the resulting $22,000 figure to reflect the fact that the Dunns had only owned a half share in the property.
[4] Ferguson and its progeny make it clear that marital debt is part of the marital property that the chancellor is to distribute. See, e.g., Watson v. Watson, 882 So.2d 95, 110(¶ 74) (Miss.2004). David, however, contends that the chancellor erred in requiring him to pay one-half of the mortgage payment on the marital home for the next eighteen months, claiming that the award "smacks of lump sum alimony." He argues that the chancellor erred by not taking into consideration the so-called Cheatham factors in his decision to require David to make the mortgage payments. See Cheatham v. Cheatham, 537 So.2d 435, 438 (Miss.1988). However, the Mississippi Supreme Court recently held that the Cheatham factors are no longer relevant in evaluating an award of lump sum alimony. Haney v. Haney, 907 So.2d 948(¶ 26) (Miss.2005). Recognizing that "lump sum alimony is nothing more than a tool to assist in equitable distribution," the Haney court held that a chancellor should instead look to the Ferguson factors in determining whether to award lump sum alimony. Haney, at (¶ 15). As will be shown, with the exception of taking into account possible tax consequences of the division, the chancellor took full consideration of the Ferguson factors in his distribution of the martial debts and assets.
[5] Notably, David Dunn admitted in his motion to reopen that "The parties wholly failed to provide the Court fair evaluations of [Dunn Surveying]." (Emphasis added).
[6] It is important to note that prior to trial, the parties agreed that David was to provide medical insurance for both children and was to cover one half of any medical expenses the children incurred that were not covered by insurance. David also agreed to share the cost of either child's extracurricular activities, should those costs exceed $100. The chancellor took consideration of these facts in determining the amount of child support to be awarded.
[7] Further, we note that had the chancellor followed the statutory guidelines, David would have been obligated to pay $799.61 per month in child support to Carrie. Likewise, Carrie would have been obligated to make a payment of $498.10 per month to David. The difference between the two amounts is $301.51, nearly $100 less than Carrie was awarded by the chancellor in his final judgment.