BARNES, J.,
for the Court.
¶ 1. Mary Rush was granted a divorce from Sam Rush on the grounds of habitual crúel and inhuman treatment. Pursuant to the judgment of divorce, the court distributed the marital assets between the two parties, awarded Mary periodic alimony, and ordered Sam to pay Mary’s attorney’s fees. Aggrieved by the chancellor’s ruling, Sam appeals to this Court. Finding no error, we affirm.
STATEMENT OF FACTS
¶ 2. Sam and Mary Rush were married on August 17, 1985, in Bay St. Louis, Mississippi. Their marriage produced one child, Samantha, who was born February 22, 1986. Although Mary testified that marital difficulties were present at an earlier date, the marriage encountered serious difficulties when Mary was injured in a ear accident on November 10, 1998. The accident left Mary with permanent brain injuries affecting her memory, her ability to read and write, her ability to relate with *324 others, and generally her ability to function in society. Testimony introduced at trial established that her personality became more hostile due to her mental impairment, and that she threatened both Sam and her daughter Samantha with physical violence.
¶ 3. Sam and Mary separated in July of 2000, and Sam began cohabiting with a girlfriend. He has had at least one other girlfriend since that time, and at the time of trial, he was again cohabiting with the first girlfriend. On September 26, 2000, Mary filed for divorce on the grounds of habitual cruel and inhuman conduct or, in the alternative, irreconcilable differences. Less than a month later, the court was forced to issue a temporary order to prevent Sam from liquidating the marital assets through an advertised “BIG MOVING SALE,” and to prevent him from fleeing the court’s jurisdiction. Then, on or about February of 2001, Mary began communicating to her attorney and to the court that she wished to terminate her independent representation and enter into an agreed settlement prepared by Sam and his attorney. Troubled by Mary’s actions, her attorney moved for the court to issue directions, as it had become apparent that Mary’s brain injuries were affecting her judgment, and she was being manipulated into an unfair settlement by her husband, daughter, and her husband’s girlfriend. In response to the motion, the court ordered an independent psychological examination of Mary. Based on the results of the psychological evaluation, Mary’s counsel moved to withdraw. The court granted Mary’s attorney’s motion to withdraw, appointed a guardian ad litem, and appointed, sua sponte, separate counsel to represent Mary. While Mary retained counsel at trial, on appeal she is represented only by her guardian ad litem.
¶ 4. The divorce proceedings commenced on March 3, 2003. Following a hearing, the chancellor issued a judgment dated February 20, 2004, in which he granted Mary a divorce on the ground of habitual cruel and inhuman treatment due to Sam’s adultery.[1] In his findings of fact, the chancellor identified three categories of marital property. The first was the mobile home in which Sam resided on his father’s land (the “Jeff Davis property”). According to Sam, this property was worth $3,500. The second was a mobile home and property purchased in November 1999, which was appraised at $47,500 (the “Yellowstone property”). This property was purchased in 1999, after Mary’s accident, but before Sam and Mary’s separation. The property was encumbered by a mortgage balance of $22,000 and a lease-purchase agreement made to a third party with a $5,100 down payment.[2] The third category of assets included a tractor, a purportedly non-functioning wave runner and trailer, a purportedly non-functioning ATV, a sixteen-foot boat and trailer, and Sam’s personal tools used in his carpentry business.
¶ 5. In making the property distribution, the chancellor found that “the greatest and most pressing issue” before him was that “Mary has great need for financial security” in that “[s]he is not able-bodied or - minded as is Sam.” Consequently, the *325 court awarded the Yellowstone property to Mary in its entirety, subject to the mortgage, and without determining the validity of the lease agreement with the third party. The court allowed Sam to retain the Jeff Davis property, but awarded Mary a one-half equitable interest in the appraised value of the property. The court allocated the tractor, wave runner, and ATV to Mary, with instructions that the assets be liquidated and reduced to cash, and the balance be distributed to Mary. Sam retained the sixteen-foot boat and his personal tools. The chancellor also awarded Mary periodic alimony of $400 per month, reasoning that an award of any more would have affected Mary’s receipt of Social Security benefits. Aggrieved, Sam perfected this appeal.
STANDARD OF REVIEW
¶ 6. In domestic relations cases, we may reverse a chancellor’s findings only if they are manifestly wrong, are not supported by substantial evidence, or are clearly erroneous. Samples v. Davis, 904 So.2d 1061, 1063-64(¶ 9) (Miss.2004) (citing Jundoosing v. Jundoosing, 826 So.2d 85, 88(¶ 10) (Miss.2002)). We will reverse if the chancellor applied an erroneous legal standard. Id. at 1064.
ISSUES AND ANALYSIS
¶ 7. Sam raises three issues on appeal. We deal with each in turn.

A. Whether the chancellor erred in his equitable distribution of the marital assets

¶ 8. Sam argues that the chancellor erred in giving Mary a one-half equitable interest in the Jeff Davis property, in giving Mary exclusive use and possession of the Yellowstone property, and in awarding Mary the possession of the wave runner, ATV, and tractor. His primary argument is that the chancellor misapplied the Ferguson factors in making these property distributions. See Ferguson v. Ferguson, 639 So.2d 921 (Miss.1994). When reviewing a chancellor’s weighing of the Ferguson factors, this Court is not at liberty to weigh the factors a second time. Dunn v. Dunn, 911 So.2d 591 (¶ 12) (Miss.Ct.App.2005). We are limited to the abuse of discretion standard. Id. (citing Phillips v. Phillips, 904 So.2d 999, 1001(¶8) (Miss.2004)). The chancellor may distribute the marital assets in his discretion pursuant to the Ferguson factors, even if the result is an unequal division of property. Id. (citing Chamblee v. Chamblee, 637 So.2d 850, 863-64 (Miss.1994)). “[F]airness is the prevailing guideline in marital division,” and “the chancellor may divide marital assets, real and personal ... as equity demands.” Ferguson, 639 So.2d at 929. The chancellor need only consider those Ferguson factors which he finds applicable; it is not necessary to apply all of the factors in every case. Glass v. Glass, 857 So.2d 786, 790(¶10) (Miss.Ct.App.2003). We find that the chancellor was justified in each distribution and therefore affirm his decision.
¶ 9. As to the Jeff Davis property, Sam posits that the Ferguson factors were incorrectly applied to give Mary a one-half equitable interest in the property. Sam argues that the testimony at trial established that the property was occupied primarily by Sam and his daughter, Samantha, and that before and after Sam and Mary’s separation, Sam had contributed the majority of payment, upkeep, and maintenance of the property. Sam argues that the Yellowstone property should have been divided equally between the parties, because it was “acquired jointly by the parties.” Sam argues that he should have received the ATV and wave runner because they were purchased for the benefit *326 of Samantha, and that he should have received the tractor, or at least an interest in the tractor, because he uses it to pursue his gainful employment. Mary counters that she worked side by side with her husband up until her unfortunate auto accident in 1998, so that all of the property was purchased with marital assets. Further, due to her mental status, she argues that she is unemployable and completely dependent on Sam to meet her needs.
¶ 10. We find that, although the chancellor did weigh the property distribution more heavily in Mary’s favor, there were substantial facts to justify his decision. The court found that Mary contributed both directly and indirectly to the acquisition of all of the distributed property, save the Yellowstone property, which was purchased after Mary’s auto accident but before the couple’s separation. The Yellowstone property was nevertheless distributed to Mary due to her financial need and because Sam had acted in bad faith by trying to sell the property before Mary could receive an interest in it. It is clear from the evidence presented that Mary is unable to support herself independently. She currently lives in government-subsidized housing. Her only income is a $550 per month Social Security check. Her psychological evaluation indicated that her reading and writing skills were, at the time of the evaluation, equivalent to that of a fifth or sixth grade student. She relies on her brother to handle her financial affairs, and according to the psychological report, she will continue to require someone else to manage her finances. The report noted that while Mary can still drive, she no longer drives to the city, and she can no longer run or walk the same distances that she did previously. Because of these facts, the chancellor found that Mary “is not able-bodied or -minded as is Sam.” Therefore, the chancellor found that Mary’s financial security was “the greatest and most pressing issue before it.” We find no abuse of discretion in this determination.
¶ 11. Further, Sam offered no proof that he would not be able to afford the property settlement. Since Sam has, according to his own testimony, the ability to earn at least $17 per hour, or an average of $550-$600 per week, in his carpentry work, there is no reason to believe that he will not be able to satisfy Mary’s one-half equitable interest on the Jeff Davis property. According to Sam’s testimony, the Jeff Davis property is only worth $3,500. The chancellor was skeptical that this was the true value of the Jeff Davis property, so he ordered that Mary’s interest will be one-half of the actual appraised value of the property. While Sam may be forced to pay more based on the true appraised value of the property, we find that any additional payment will be the result of Sam’s undervaluing the property in his testimony. As stated previously, the Yellowstone property was properly distributed to Mary pursuant to the Ferguson factors because of Mary’s financial need and because Sam attempted to expend the marital asset wastefully prior to the hearing. The ATV and wave runner were properly distributed to Mary because, according to Sam’s testimony, both items were non-functioning and had been for some time. Thus, they would be useless to Samantha, but their salvage value could be used to improve Mary’s financial status. Finally, Sam’s argument regarding the tractor is contradictory, since his own testimony at trial was that he did not use the tractor to pursue his gainful employment. According to his testimony at the hearing, he used the tractor around his home, not in his carpentry work.
¶ 12. On our limited standard of review, we do not find that the chancellor erred in distributing the marital assets.

*327
B. Whether the trial court erred in awarding Mary $4-00 per month in alimony

¶ 13. Sam argues that the chancellor erred in awarding Mary $400 per month in periodic alimony because that amount would exceed one-third of his projected monthly income after expenses. Although it is not clear how he arrives at his numbers, Sam appears to make his calculation based on a figure of $600 per week income, or $2,400 per month. Then, he subtracts his monthly expenses of approximately $1,200, for a monthly income after expenses figure of $1,200. Since $400 is one-third of $1,200, he claims that this award of alimony “is unjust and oppressive and should be set aside.” ' He further claims that there was no evidence that he was employed for a full forty hours each week. Mary counters that, first, the weekly earning capacity to which Sam testified is likely a baseline number because Sam knew at the hearing that any award of alimony would be based on his stated earning capacity.[3] Second, she proffers that $400 is only twenty-one percent of Sam’s gross monthly income of $1,950 after taxes.
¶ 14. A chancellor may make an award of periodic alimony depending on the circumstances of the parties. Monroe v. Monroe, 612 So.2d 353, 357 (Miss.1992). An award of alimony is proper when one party is left with a deficit following the division of marital assets. Johnson v. Johnson, 650 So.2d 1281, 1287 (Miss.1994). “[A]limony, if allowed, should be reasonable in amount commensurate with the wife’s accustomed standard of living, minus her own resources, and considering the ability of the husband to pay.” Gray v. Gray, 562 So.2d 79, 83 (Miss.1990). In deciding whether to make an award of alimony, the chancellor should consider that both husband and wife “are entitled to maintain a ‘decent standard of. living,’ whenever possible.” Monroe, 612 So.2d at 357 (quoting Gray, 562 So.2d at 83). “As long as the chancellor follows this general standard, the amount of the award is largely within his discretion.” Gray, 562 So.2d at 83.
¶ 15. In his judgment, the chancellor found that “a substantial settlement to [Mary] would free her from dependency on [Sam] for her needs. On the other hand, there just is so little for either party here. Regrettably, this is one of those marriages where the divorce will leave both of them impoverished.” The chancellor attempted to free Mary from dependence on Sam to the extent possible through the property settlement. However, there were simply too few assets available to position Mary in the standard of living to which she was accustomed through a property distribution. At the time of the hearing, Mary was housed in government-subsidized housing in a dangerously high-crime area, well below the standard of living she enjoyed prior to the parties’ separation. In order to return Mary to her previous position, the chancellor was forced to consider not only the cost of placing her in a comparable mobile home, but also the cost of maintaining her in that position since she is currently unemployable due to her mental condition. Given these circumstances, an award of periodic alimony was well within the chancellor’s discretion.
¶ 16. It is clear that the monthly amount of alimony awarded to Mary is acceptable. The chancellor found that Sam’s monthly take-home pay, after taxes, *328 would be at least $2,000. Of this amount, Sam claimed $1,600 in expenses, half of which he claimed to be food expenses. The chancellor found that $800 per month food expenses was an exorbitant estimate, and awarded $400 per month periodic alimony to Mary. In his brief, Sam claims only $1,200 in expenses, and claims that $400 per month in alimony is an oppressive and unjust amount when compared to his post-expense income. We do not agree. Clearly, Sam will have monthly income remaining even after paying alimony and his estimated monthly expenses, be they $1,600 or $1,200. Thus, the award of alimony will allow Sam to maintain his current standard of living while helping Mary maintain hers. We also note that the chancellor limited the amount of alimony awarded so as not to disturb Mary’s receipt of Social Security disability income. We conclude that Sam’s challenge to the award of periodic alimony is without merit.

C. Whether the chancellor erred in awarding attorney’s fees

¶ 17. An award of attorney’s fees is generally left to the sound discretion of the court. Cheatham v. Cheatham, 537 So.2d 435, 440 (Miss.1988). If a spouse is financially capable of paying attorney’s fees, then an award is not justified. Hubbard v. Hubbard, 656 So.2d 124, 131 (Miss.1995).
¶ 18. Sam argues simply that Mary is not entitled to an award of attorney’s fees because she was able to hire private counsel when she initiated this divorce. It does appear that Mary hired private counsel at the outset of this divorce. However, the court appointed new counsel for Mary on October 29, 2001. Then, in an order dated January 24, 2002, the chancellor found that Mary did not have sufficient assets to pay her counsel and ordered that the payment of her attorney’s fees be provided by the Hancock County Board of Supervisors. For the remainder of the divorce proceedings, Mary’s attorney’s fees were paid by the Hancock County Board of Supervisors.
¶ 19. Sam has provided no evidence that Mary has any ability to pay her attorney’s fees. In fact, the evidence confirms the chancellor’s finding that Mary is indigent and unable to pay her attorney’s fees: Mary currently resides in government-subsidized housing and subsists on approximately $550 per month in Social Security benefits. This being the case, there is no merit to Sam’s contention, and the court properly held that he is responsible for Mary’s attorney’s fees.
¶ 20. Finding no error in the chancellor’s judgment, we affirm.
¶ 21. THE JUDGMENT OF THE CHANCERY COURT OF HANCOCK COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., BRIDGES, IRVING, CHANDLER, GRIFFIS AND ISHEE, JJ., CONCUR.

. On appeal Sam contests only the chancellor’s distribution of marital assets. He does not argue that the chancellor erred in granting a divorce on these grounds.

. Prior to trial, Mary had been forced to file a lis pendens notice to prevent the third party from exercising an option to purchase under the lease contract. The chancellor viewed the lease-purchase agreement as an attempt by Sam again to liquidate marital assets prior to the entering of a judgment dividing the marital property.

. At the hearing, Sam offered no substantive evidence of his actual income, such as income tax returns. The chancellor found that "Mr. Rush is employed at his own whim, paid cash, and responsible to no one, at best." Thus, the chancellor's determination of Sam’s income was necessarily based entirely on Sam’s somewhat evasive testimony.